**Steven C. MICHAEL, Appellant,**

v.

**CITY OF DALLAS, Appellee.**

**No. 05–09–00210–CV.**

Court of Appeals of Texas, Dallas.

June 10, 2010.

---

W.D. Masterson, John H. Crouch, Kilgore & Kilgore, Inc., Dallas, for Appellant.

Jason D. McClain, Barbara E. Rosenberg, City of Dallas Attorney's Office, Dallas, for Appellee.

Before Justices MOSELEY, RICHTER, and FRANCIS.

## OPINION

Opinion By Justice RICHTER.

Appellant, Steven C. Michael, filed suit against the City of Dallas alleging he was wrongfully discharged because of his race and disability. The trial court granted the City's motion for summary judgment and

Michael appeals. In a single issue, Michael contends the trial court erred when it granted the City's motion for summary judgment. We affirm the trial court's judgment.

## BACKGROUND

Michael was hired by the City on April 11, 2007, as an Environmental Inspector III for the City of Dallas Water Department. This is a civil service position that requires the employee to serve a six-month probationary period, during which time they are an at-will employee and can be discharged at any time. Michael is a white male and it is not disputed that he is disabled. Michael disclosed the existence of his disability on his application and to his immediate supervisor, Yilam Zerihun. Zerihun made accommodations for Michael's disability, including limiting his lifting to under 20 pounds and approving time off to schedule doctor's visits. Michael characterized Zerihun as being "irritated" with his taking time off for medical appointments. The evidence showed Zerihun merely suggested that Michael schedule his appointments on Friday, the day he is off, and Michael agreed.

Morgan Dadgostar, Senior Program Manager for the City Water department, had final hiring and firing approval over Michael. Dadgostar did not interview Michael before he was hired and did not know he was disabled, but did know he was white. Michael was the highest paid employee in his section and the increased starting salary had been requested by Dadgostar.

Within three weeks after Michael was hired, one of his co-workers, Shavonn Stearns reported to Zerihun that Michael had made violent threats that he "may need to bring his 45" to work to deal with "the pickiness of our supervisor" and "blowing up this place." Zerihun reported the complaint to her supervisor, Maurice Akech, and Akech notified Dadgostar. Dadgostar met with Stearns to discuss her report and asked her to put it into writing. Stearns had been employed by the City for approximately seven years and had never made a complaint like this. Michael acknowledged that he had a license to manufacture and sell guns, and that this was known by his co-workers.

After Dadgostar interviewed Stearns, Dadgostar concluded she believed Stearns and Stearns had no reason to make up the allegations. Dadgostar proceeded to investigate what action she should take. Dadgostar knew the City had a zero-tolerance policy on any types of threats or violence in the workplace. She consulted with the human resources department ("HR") to determine what action to take. The senior human resource analyst advised Dadgostar that the City had a written prohibition and zero tolerance policy on any type of threats in the workplace and that any probationary employee like Michael should be, and in similar circumstances had been, discharged.

Dadgostar notified the Dallas police department, but did not contact any other law enforcement agencies. Dadgostar scheduled a meeting with Michael and had two plain clothed Dallas police officers, Zerihun, and an HR representative present. At that meeting Dadgostar gave Michael a letter stating that he was being discharged for failure of his initial probation period. Dadgostar did not reveal Stearns's complaint because she was concerned about her safety. Michael asked why he was being terminated, but no further reason was provided. He asked if it was because of his disability, and he said that his statement appeared to surprise everyone. Dadgostar stated that this was the first time she learned of Michael's disability. For the following two weeks,

Dadgostar arranged to have a private security firm monitor the work-site to ensure there were no incidents.

Dadgostar later replaced Michael with another white male. Dadgostar is a female of Iranian descent; Zerihun, Akech, and Stearns are all African American. The City did not disclose the charges made by Stearns until it was required to do so by the Attorney General's Office. Michael denies he made the statements and characterizes them as "bizarre and extreme." He also alleges Stearns was a "disgruntled employee who felt she was 'unappreciated,' who felt her compensation was 'inadequate,' and who resigned two months after getting Plaintiff fired." Michael maintains that he was fired because he is a white male and because he is disabled.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

On appeal, we review a summary judgment de novo to determine whether a party's right to prevail has been established as a matter of law. *Stancu v. Stalcup*, 127 S.W.3d 429, 431–32 (Tex.App.-Dallas 2004, no pet.). With a traditional motion for summary judgment the movant must establish that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A defendant is entitled to summary judgment when he disproves one of the essential elements of the plaintiff's claim. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). After the moving party presents evidence showing it is entitled to summary judgment, the burden shifts to the nonmovant to present evidence of any issues of material fact that would preclude summary judgment. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996). When the trial court grants summary judgment without stating the grounds for doing so, we must consider all grounds presented in the motion for summary judgment and affirm the trial court if any of the theories has merit. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

## EMPLOYMENT DISCRIMINATION CLAIMS

### Applicable Law

Under the Texas Commission on Human Rights Act ("TCHRA"), it is unlawful for an employer to discharge an employee, because of the employee's race, color, disability, religion, sex, national origin, or age of the employee. TEX. LAB. CODE ANN. § 21.051(1) (Vernon 2006). The TCHRA is modeled on federal law to execute the policies of Title VII of the Civil Rights Act of 1964, and subsequent amendments, and execute the policies in Title I of the Americans with Disabilities Act of 1990 ("ADA"), and its subsequent amendments. TEX. LAB.CODE ANN. § 21.001(1) and (3) (Vernon 2006). Accordingly, when we address an issue brought under the TCHRA we may consider federal cases interpreting the analogous provision. *Caballero v. Central Power & Light Co.*, 858 S.W.2d 359, 361 (Tex.1993).

In an employment discrimination case based upon circumstantial evidence the employee has the initial burden of proving a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To establish a prima facie case of employment discrimination the plaintiff must show (1) he was a member of a protected class, (2) he was qualified for his employment position, (3) he was subject to an adverse employment decision, and (4) he was replaced by someone outside of the protected class, or he was treated less favorably than

similarly situated members of the opposite class (disparate treatment cases). *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097; *Ysleta Ind. School Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex.2005) (disparate treatment case). Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to show that the employee was terminated for a legitimate, non discriminatory purpose. *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097. If the defendant proffers a legitimate reason for the adverse employment decision, the burden shifts back to the plaintiff to show either (1) the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor ("mixed motive"). *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir.2004); *McCoy v. Texas Instruments, Inc.*, 183 S.W.3d 548 (Tex.App.-Dallas 2006, no pet.).

Michael alleged in his original petition, and in response to the City's motion for summary judgment, that the real reason he was fired was because his African American managers discriminated against him because of his race, and the City was concerned that his disability would cause the City to incur large medical expenses. Michael alleged that as a result of this discrimination, he "suffered disparate treatment." The City argued that it was entitled to summary judgment because Michael cannot establish a prima facie case of discrimination because Michael cannot show he was treated differently from non-disabled or non-white employees. The City did not challenge the remaining elements of a prima facie case of employment discrimination.[1] The City also argued that it had a legitimate reason for terminating him based on threats of workplace violence.

### Prima Facie Case of Employment Discrimination

■ In order to establish a prima facie case based upon disparate treatment the plaintiff must show that he was treated less favorably than "similarly situated" non-protected class members. *Ysleta*, 177 S.W.3d at 917. The Texas Supreme Court examined the meaning of "similarly situated" in *Ysleta*. It concluded that in the context of discrimination based upon disparate discipline, "the disciplined and undisciplined employees' misconduct must be of 'comparable seriousness.'" *Id.* This would require Michael to show that his misconduct was "nearly identical" to that of an employee from the opposing class who was retained. *Id.* Michael presented no evidence that he was disciplined differently from any other employee. In fact, Michael admitted he had no evidence that he had been disciplined differently from other non-disabled or non-white employees. The City, on the other hand, established that it had a zero tolerance policy on work place violence, and another employee was terminated for a much less serious offense—arguing.

■ The only evidence Michael offered in support of his discrimination claim was his own unsubstantiated allegations that the three African American supervisors discriminated against him because he is white and was the highest paid member in the department. "An employee's subjec-

---

1. Michael did not plead, or provide any evidence, that he was replaced by someone outside of his protected class (either non-white male or non-disabled). The only evidence relating to his replacement was provided by the City and established that Michael's replacement was a white male, employed at the same pay, but there was no evidence on whether the replacement was or was not disabled.

tive belief of discrimination or retaliation, no matter how genuine, cannot serve as the basis for judicial relief." *McCoy,* 183 S.W.3d at 555. Michael claims that the allegations of work place violence by Stearns were so bizarre and absurd that the nature of the allegations established the allegations were merely stereotypical charges and untrue. However, the supervisor, Dadgostar, who made the final decision to terminate Michael, investigated Stearns's charge, concluded she had no reason to fabricate the story, and had never made any similar allegations in her seven years with the department. Finally, after terminating Michael, the City replaced him with another white male employee, at the same pay level.

Michael also failed to offer any evidence that he was treated differently because of his disability. He admitted that his immediate supervisor, Zerihun, was aware of his disability and granted him accommodations by allowing him time off for doctor appointments, and limited lifting of anything over twenty pounds. Within his first three weeks of employment Michael missed three days for doctor appointments and each was approved. Michael alleged that Zerihun was responsible for limiting the department's medical costs, but there was *no evidence supporting this statement.* Instead, Zerihun recommended that Michael schedule doctor appointments on Fridays when he was already off, and that Zerihun was responsible for controlling medical *leave,* not costs.

Michael cannot establish a prima facie case of employment discrimination based upon "conclusory allegations, ... or subjective beliefs and feelings." *Greathouse v. Alvin Indep. Sch. Dist.,* 17 S.W.3d 419, 425 (Tex.App.-Houston [1st Dist.] 2000, no pet.). He presented no evidence that he was treated any differently from any other employee who violated the City's policy on work place violence. Therefore, we conclude that Michael failed to present evidence of a prima facie case of employment discrimination, either because of his disability or race.

Finally, Michael argues that the federal courts in the fifth circuit have relaxed the requirements for a prima facie case of employment discrimination. He contends that he does not have to provide evidence that he was replaced by someone outside of the protected class, or provide evidence that others outside of the class were treated more favorably. Instead, he contends the fourth requirement of a prima facie case can be satisfied by generally showing that he was discharged because of discrimination. *See, Palasota v. Haggar Clothing Co.,* 342 F.3d 569, 576 (5th Cir.2003); *Nieto v. L & H Packing, Co.,* 108 F.3d 621, 624 (5th Cir.1997). However, even if we adopted a more flexible approach, Michael cannot satisfy his burden. He has presented no evidence of discriminatory treatment other than his own subjective beliefs. Michael's own statement of belief does not, however, provide any evidence of discrimination. *McCoy,* 183 S.W.3d at 555.

## CONCLUSION

Michael presented no evidence to support his claim that he was fired because he was white or disabled. He has therefore failed to establish a prima facie case of employment discrimination. We do not address the remaining arguments related to the second and third prong of the *McDonnell Douglas* burden shifting analysis because we conclude Michael has failed to establish a prima facie case. Accordingly, we conclude the trial court properly granted the City's motion for summary judgment and affirm the judgment of the trial court.