# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## ON MOTION FOR REHEARING
---

---
### NO. 03-14-00112-CV
---

**Dr. James Jones, Appellant**

**v.**

**Angelo State University, Appellee**

---
**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT
NO. C-110272-C, HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING**
---

### M E M O R A N D U M   O P I N I O N

We withdraw the opinion and judgment dated December 18, 2015, and substitute the following opinion and judgment in their place. We deny the parties' respective motions for rehearing.

Appellant Dr. James Jones sued his former employer, Angelo State University, alleging he had been discharged from his employment due to his religious beliefs and practices. *See* Tex. Lab. Code §§ 21.051, .108. After the trial court granted summary judgment in favor of the University, Jones filed this appeal. In four issues, Jones contends that the trial court erred in granting the University's motion for summary judgment and dismissing his claims of religious discrimination. We affirm the trial court's judgment with respect to its dismissal of Jones's claim

of discriminatory discharge based on disparate treatment. However, because we conclude that the trial court erred to the extent it granted summary judgment on Jones's claim that the University failed to accommodate his religious practice, we will reverse this portion of the trial court's judgment and remand the case to the trial court for further proceedings.

## BACKGROUND

In 2005, Jones was hired as an associate professor in the department of computer science at Angelo State University. Jones's employment was considered a "tenure track appointment," whereby Jones's contract for each nine-month academic year could be renewed. That is, Jones could either be "reappointed" or "non-reappointed" at the end of each year. Jones taught at the University for four academic years beginning in the 2005–2006 academic year.

Jones identifies himself as "an active evangelical Christian" and maintains that "it is his religious practice to identify himself as an evangelical Christian and to share his faith with others." According to Jones, during his employment with the University, he would engage in this practice by briefly making a religious statement to his students at the beginning of the first class of the semester and at the end of the last class of the semester. Specifically, Jones admits that he would introduce himself and, among other things, discuss his family, his interests, and his Christian faith. Jones would inform his students that "being a Christian was his most defining quality and state briefly what it means to be a Christian." Then, on the last day of class, Jones would part ways by writing the words "richest of fare" on the blackboard and relate those words to a Bible verse, Isaiah 55:2.

2

In August 2006, following a written complaint from a student concerning Jones's practice of making religious statements, the University determined that Jones had violated a University rule that generally prohibited the discussion of "controversial material in the classroom."[1] Dr. Charles McCamant, then the chair of the department of computer science, spoke with Jones about his religious statements in class. McCamant informed Jones that his religious statements violated University policy, that they were considered inappropriate, and that he should cease immediately. According to Jones, he repeatedly requested clarification from the University on its policy and on exactly what he could say and do in the classroom that would conform with this policy. However, Jones contends that the University failed to provide any further explanation or clarification. Jones continued his practice of making religious statements at the beginning and end of each semester.

In November 2006, McCamant conducted performance evaluations of his faculty members, including Jones. Although McCamant noted on Jones's evaluation form in the "comments" section that Jones had been informed that he was in violation of University rules regarding his religious statements in class, McCamant marked Jones's performance as "satisfactory" and recommended that Jones be reappointed for the following academic year. In conformance with McCamant's recommendation, Jones was reappointed for the upcoming 2007–2008 academic year.

According to the University, soon after his November 2006 evaluation, Jones's performance in the classroom declined and he engaged in behavior that demonstrated a lack of collegiality and disrespect for University protocol, aside from the issue of his continued practice of

---

[1] We wonder where discussion of "controversial material" is appropriate, if not in a university classroom, but that is not the issue before us.

3

making religious statements.[2]  In February 2008, the subsequent chair of the department, Tim Roden, conducted Jones's performance evaluation based on the prior academic year.  In this evaluation, Roden expressed concern over what he considered to be poor student evaluations and acts of insubordination.  Roden recommended that Jones not be reappointed for the following academic year.  Upon reviewing the evaluation and supporting documentation forwarded by Roden, on June 13, 2008, the University president issued to Jones a non-reappointment letter and termination contract for the 2008–2009 academic year, meaning that the 2008–2009 academic year would be Jones's final year at the University.

On December 10, 2008, Jones filed a "complaint of discrimination" with the EEOC and the Texas Workforce Commission and, upon receiving a "right to sue" letter, filed suit against the University.  Among other claims, Jones asserted that the University's actions constituted religious discrimination under the Texas Commission on Human Rights Act, Chapter 21 of the Texas Labor

[2] According to the University, discussions regarding Jones's employment continued throughout the spring of 2007 between University Provost, Dr. Donald Coers, and McCamant.  In September 2007, McCamant stepped down as department chair and was replaced by Tim Roden.  However, just prior to the relinquishment of his duties, McCamant recommended to Coers that Jones be issued a termination contract for the 2007–2008 academic year.  According to the University, "McCamant was particularly concerned that Jones wanted to buy out his teaching contract and only do research." Acting on McCamant's and Coers's recommendation, University President, Dr. Joseph Rallo, then sent a letter advising Jones that the 2007–2008 academic year would be his last year at the University and that he would not be reappointed for the 2008–2009 academic year.  Jones requested that President Rallo reconsider the decision not to reappoint him and told Rallo that he believed that the decision had been based "on discriminatory and/or unlawful reasons."  Rallo agreed to review the file, and on January 28, 2008, Rallo decided that the evidence was insufficient to support the decision at that time.  Consequently, Rallo rescinded the non-reappointment decision and reinstated Jones as a tenure-track member of the department of computer science for the 2008–2009 academic year.

Code (TCHRA).[3] Jones alleged that he was reprimanded and ultimately not reappointed to his position as a result of his religious beliefs, observances, and practices and that he was treated "less favorably than other faculty members because of his religion and/or religious beliefs, observances, and practices." In addition, Jones also claimed that the University "failed to reasonably accommodate [his] religious observances and practices by concluding that [he] was in violation of the [University's] Rules and Regulations, and further, by prohibiting him from referencing those beliefs, which assisted his students in understanding his perspective during classroom discussions."

The University filed a motion for summary judgment. The trial court signed an order granting the University's motion for summary judgment without specifying the ground on which it granted relief. Jones then perfected this appeal.

## STANDARD OF REVIEW

We review a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). If a trial court grants summary judgment but does not specify the grounds for granting the motion, we must uphold the judgment if any of the grounds asserted in the motion and preserved for appellate review are meritorious. *Provident Life & Accident*

---

[3] Jones also filed suit for breach of contract, for age discrimination and retaliation under the TCHRA, for violations of the Texas Religious Freedom Restoration Act (RFRA), and for violations of the Texas Constitution related to religious freedom. Jones's RFRA claims and breach-of-contract claims were dismissed by the trial court upon its consideration of the University's motion to dismiss. The remainder of Jones's claims were dismissed by the trial court in response to the University's motion for summary judgment. In this appeal, Jones only challenges the trial court's dismissal of his religious discrimination claims under the TCHRA. As a result, we do not consider the propriety of the trial court's dismissal of Jones's other claims. *See* Tex. R. App. P. 38.1(f), (i) (appellant's brief must state concisely all issues or points presented for review).

5

*Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). In reviewing a trial court's ruling on summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve all doubts in the nonmovant's favor. *Id*.

**DISCUSSION**

Under section 21.051 of the TCHRA, an employer commits an unlawful employment practice if, because of the employee's religion, the employer "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." Tex. Lab. Code § 21.051(1). Additionally, section 21.108 of the TCHRA provides that an employer engages in religious discrimination if the employer fails to make reasonable accommodations for the religious observances of its employees. *Id*. § 21.108. The Texas Legislature enacted the TCHRA, in part, "to execute the policies of Title VII of the Civil Rights Acts of 1964 and its subsequent amendments." *Id*. § 21.001(1). Consequently, when analyzing a claim brought under the TCHRA, we look not only to state cases, but also to relevant federal law to the extent the provisions of Title VII are analogous. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001).

**Disparate treatment**

On appeal, Jones asserts that the trial court erred in granting summary judgment on his claims that his discharge was impermissibly based on religion, *see* Tex. Lab. Code § 21.051(1), and that the University failed to accommodate his religious practice, *see id*. § 21.108. We first consider whether the trial court erred in granting summary judgment on Jones's claim that his discharge was impermissibly based on religion.

6

Texas courts recognize two alternative methods for proving discriminatory treatment, such as Jones's claim of discriminatory discharge. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). First, the plaintiff may prove discriminatory intent by direct evidence of what the defendant did and said. *Id*. "Direct evidence is evidence that, if believed, proves the factor of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Second, and more typically, a plaintiff may rely on circumstantial evidence of discrimination. *Garcia*, 372 S.W.3d at 634. In these cases, we apply the burden-shifting framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, discrimination is presumed if the plaintiff meets an initial burden of proving a prima facie case of discrimination. *Garcia*, 372 S.W.3d at 634.

To establish a prima facie case of disparate treatment based on a discriminatory discharge, a plaintiff must demonstrate that (1) he was a member of a protected class; (2) he was qualified for the position he held; (3) he was discharged; and (4) he was replaced by a person who is not a member of the protected class, if he was replaced, or that he was treated less favorably than similarly situated persons who are not members of the protected class. *Id.* at 636; *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 814 (Tex. App.—Houston [14th Dist.] 2012, no pet.). If established, the prima facie case creates a rebuttable presumption of discrimination that the employer's actions were motivated by impermissible factors, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Garcia*, 372 S.W.3d at 634.

Here, the University moved for summary judgment on Jones's discriminatory-discharge claim on the ground that Jones could not provide any direct proof of discriminatory intent

and could not establish a prima facie case of disparate treatment.[4] Jones contends that he was not required to present any evidence with regard to the protected-class status of his replacement or his co-workers or with regard to any other element of a prima facie case under the *McDonnell Douglas* framework. Jones asserts that he, instead, presented the trial court with direct evidence of discriminatory intent.

The record before us establishes that Jones is an evangelical Christian and that he was asked by the University to stop engaging in what he considers a religious practice—sharing his religious beliefs with others by making religious statements in class. On appeal, however, Jones does not contend that he produced evidence that he was told by the University that he would not be reappointed because he is an evangelical Christian or because he holds certain religious beliefs. Instead, in support of his argument, Jones relies on evidence that the decision not to reappoint him as an associate professor was based in part on his failure to comply with the University's request that he stop making religious statements in class. Primarily, Jones cites Dr. Donald Coers's deposition testimony, in which Coers stated that Jones's religious statements "might have been . . . one of" the reasons for the decision not to reappoint and that Jones's refusal to stop making religious statements in class was a factor "in his recommendation." In response, the University contends that "any instruction by [the University] to Jones to refrain from making religious statements in class was not directed to his religious practice, but rather directed to his practice of teaching." The University

---

[4] Alternatively, the University asserted that Jones's claim of discriminatory discharge fails because "the evidence conclusively disproves that Jones's non-reappointment was a pretext for unlawful discrimination." According to the University, it has "always maintained that Jones was not reappointed because of his poor teaching evaluations in the fall of 2007, his refusal to follow lawful and reasonable directives from his department chair, and his poor departmental collegiality."

8

asserts that, consequently, Jones has offered no direct evidence that the University's decision to discharge Jones was discriminatory.

We agree that the evidence cited by Jones does not constitute direct evidence of discriminatory discharge to the extent Jones's discrimination claim is based on disparate treatment. Instead, Jones's evidence demonstrates, at most, that he was ultimately discharged for failing to comply with an employment requirement that conflicted with his religious practice and that as a result, the University, at least potentially, discriminated by failing to accommodate his religious practice as it relates to his employment. *See* Tex. Lab. Code § 21.108. This evidence does not directly demonstrate that the University's decision to discharge Jones was motivated by the fact that Jones holds certain religious beliefs or engages, generally, in certain religious practices.[5] A claim for disparate treatment arises from the protected-class status of the plaintiff. *See McDonnell Douglas*, 411 U.S. at 801-803. The evidence cited by Jones is not direct evidence that his protected-class status—as opposed to his refusal to comply with a condition of his employment—was a motivating factor in the University's decision not to reappoint him to his faculty position.[6] *See KIPP, Inc. v. Whitehead*, 446 S.W.3d 99, 107 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)

---

[5] Jones argues that this same evidence also constitutes direct evidence of the University's failure to accommodate his religious practice. However, we express no opinion on whether Jones's evidence was sufficient to defeat summary judgment on his failure-to-accommodate claim for the reasons explained below.

[6] In effect, Jones attempts to recast his evidence supporting his failure-to-accommodate claim as direct evidence of a disparate-treatment claim. As we discuss further in this opinion below, employers may defeat a failure-to-accommodate claim by showing that the accommodation would impose an undue burden on the employer. Under Jones's view of "direct evidence" of discriminatory intent, every prima facie showing of an employer's failure to accommodate a religious practice would necessarily constitute direct evidence of disparate treatment based on a religious practice. This would effectively eliminate the undue-burden defense.

9

("Generally, statements that courts have found to constitute direct evidence of discrimination are insults or slurs made against a protected group."); *cf. Dixon v. Hallmark*, 627 F.3d 849, 855 (11th Cir. 2010) (evidence that supervisor told plaintiff, "You're fired, too. You're too religious," was direct evidence of disparate treatment based on religion). Consequently, to defeat the University's summary judgment on his discriminatory-discharge claim based on his religion as a protected class, Jones was required to present a prima facie case of disparate treatment. *See McDonnell Douglas*, 411 U.S. at 792.

Jones argues that, even if he did not present direct evidence of discriminatory intent, he presented evidence sufficient to support a prima facie case of disparate treatment. The University moved for summary judgment on the ground that Jones could not establish a prima face case of disparate treatment because he could not present sufficient evidence of one element—"that he was replaced by someone outside his protected class or treated less favorably than similarly situated co-workers outside his protected class." Jones asserts that the trial court erred to the extent it granted summary judgment on this ground because, according to Jones, he presented summary-judgment evidence sufficient to demonstrate that his co-workers were not members of his protected group and were treated more favorably.

In support of his argument, Jones does not assert that he presented the trial court with evidence that his co-workers were not also Christians. Instead, Jones relies on his own affidavit, in which he testifies that his four co-workers "never evidenced an active evangelical Christian core belief to share their faith with others." Jones's argument assumes, without any support, that Christians who share his particular evangelical beliefs are considered to be a "protected class,"

10

separate and apart from Christians in general. In any event, we need not decide this issue because evidence that Jones had no reason to believe that his co-workers shared his same religious beliefs is not evidence that they, in fact, did not. *See Michael v. City of Dallas*, 314 S.W.3d 687, 692 (Tex. App.—Dallas 2010, no pet.) (explaining that plaintiff cannot establish prima facie case of employment discrimination through conclusory allegations or subjective beliefs and feelings). In addition, Jones presented no evidence that the person who replaced him did not also share his religious beliefs. *See Garcia*, 372 S.W.3d at 636. Because there is no evidence that Jones was replaced by a person who is not a member of his same protected class or that his co-workers, who he contends were treated more favorably, were not also members of the same protected class, he failed to meet this burden. *See id.*; *see also Chandler*, 376 S.W.3d at 814. Consequently, the trial court did not err to the extent it granted summary judgment on Jones's claim of discriminatory discharge based on disparate treatment.

**Failure to accommodate**

Next, we consider Jones's argument that the trial court erred in granting summary judgment on Jones's claim that the University discriminated against him because it failed to reasonably accommodate his religious practice. *See* Tex. Lab. Code § 21.108.

Claims of religious discrimination based on a failure to accommodate are analyzed under a burden-shifting framework. *Davis v. Fort Bend County*, 765 F.3d 480, 486 (5th Cir. 2014). An employee satisfies his initial burden by showing that: (1) he has a bona fide religious belief or practice that conflicts with an employment requirement; (2) he informed the employer of this belief or practice; and (3) he suffered an adverse consequence for failing to comply with the conflicting

11

employment requirement. *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013); *Grant v. Joe Meyers Toyota, Inc.*, 11 S.W.3d 419, 422-23 (Tex. App.—Houston [14th Dist.] 2000, no pet.). If the plaintiff succeeds in meeting this burden, the burden shifts to the employer to show that it could not accommodate the plaintiff's religious belief or practice without undue hardship. *Grant*, 11 S.W.3d at 423.

On appeal, the University does not contend that Jones failed to present evidence sufficient to demonstrate a prima facie case of failure to accommodate. Instead, the University argues that Jones cannot rely on a failure-to-accommodate theory to argue that the trial court erred in dismissing Jones's TCHRA claims for two reasons. First, the University argues that Jones failed to timely present his failure-to-accommodate claim to the Texas Workforce Commission, a jurisdictional prerequisite to filing suit. Second, the University argues that, even if the claim is not jurisdictionally barred, the University's request that Jones refrain from making religious statements in his classes cannot serve as the basis for a failure-to-accommodate claim as a matter of law. We will first consider the University's jurisdictional argument.

Under the TCHRA, an employee must file his charge alleging discrimination with the Texas Workforce Commission within 180 days of the alleged discriminatory conduct. Tex. Lab. Code § 21.201(a). The timely filing of the complaint is mandatory, and when the defendant is a governmental entity, the failure to timely file is a jurisdictional bar to suit. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 514 (Tex. 2012). The University points out that Jones first contacted the Commission on December 10, 2008, and therefore he is barred from recovering for any alleged discriminatory actions that occurred prior to June 13, 2008. According to the University,

12

Jones's failure-to-accommodate claim is based on allegations that the University failed to respond to requests for accommodation made before and during 2007 and, as a result, the claim is now jurisdictionally barred.

Under the TCHRA, the 180-day period for filing a complaint with the Commission begins to run "when the employee is informed of the allegedly discriminatory employment decision," not at some later date when the decision comes to fruition or when the employee discovers his employer's discriminatory motive. *Id.* at 500. "This is because it is the discriminatory employment decision that is made with discriminatory intent." *Id.* To prevail on a claim of religious discrimination based on an employer's failure to accommodate a religious practice, however, a plaintiff must demonstrate that he "suffered an adverse consequence for failure to comply with the conflicting employment requirement." *See Grant*, 11 S.W.3d at 422-23. Thus, in this type of case, the discriminatory act (triggering the 180-day deadline) occurs not when an employee is informed that he is expected to comply with a requirement that conflicts with his religious practice, but when the employee is informed of an adverse employment decision made as a consequence of his failure to comply.

Here, the summary-judgment record demonstrates that Jones was informed that the University believed that his religious practice conflicted with University policy beginning in 2007. However, there is no evidence that the University informed Jones that he would be terminated if he failed to comply, decided to terminate Jones, or otherwise took any adverse action against Jones at that time. In fact, the University did not discharge Jones until June 13, 2008, when he was sent a letter by the President of the University, informing him of his non-reappointment for the 2009–2010

13

academic year.  Jones timely filed his complaint 180 days later, and consequently the trial court had

jurisdiction to consider the claim.[7]

Having rejected the University's argument that the trial court lacked jurisdiction to

consider Jones's religious-discrimination claim based on an alleged failure to accommodate his

religious practice, we consider whether the trial court erred in granting summary judgment in favor

---

[7] The University cites several federal cases concerning what it characterizes as "analogous failure-to-accommodate claims" for the proposition that the denial of a request for an accommodation is a "discrete discriminatory act" that triggers the filing deadline.  *See Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009) (explaining that statute of limitations begins to run on employee's failure-to-accommodate-disability claim when request for accommodation is denied because "such a denial is a discrete discriminatory act that, like a termination, a refusal to transfer, or a failure to promote, does not require repeated conduct to establish an actionable claim"); *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032-33 (8th Cir. 2005) (concluding that failure-to-accommodate-disability claim was time barred because last refusal to offer the employee "a job she requested" was outside of limitations period); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 135 (2d Cir. 2003) (filing period on failure-to-accommodate claim began to run when employer informed employee that his requested religious accommodation was rejected and not from last time employee was prevented from observing religious practice).  We do not agree that these cases are determinative in this dispute.

The cases cited by the University arise from complaints that the employee requested a specific accommodation from a condition of his employment, the request was denied by his employer, and the employee complied with the condition of his employment without accommodation.  In contrast, here, Jones requested an unspecified accommodation from the University's rule regarding "controversial material" in the classroom, the University failed to respond to his request, and Jones continued to engage in his "religious practice" until he was eventually notified of his termination more than a year later.  In other words, Jones's failure-to-accommodate claim is not based on allegations that the University denied his request for an accommodation and that he suffered an adverse consequence as a result of having to comply with the University's rule.  We agree that such a claim, to the extent it exists, would be time barred. Jones's failure-to-accommodate claim, however, is based on allegations that Jones was terminated for failing to comply with the University's rule.  *See Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013).  This is a discrete employment decision that is independently actionable, and as we have explained, Jones timely filed his complaint regarding that decision.  *See National R.R. Passenger Corp. v. Morgan*, 536 US 101, 113 (2002) (ruling that "each discrete discriminatory act starts a new clock for filing charges alleging that act").

14

of the University on this claim. To move for summary judgment on the ground that there is no evidence to support a claim, the movant is required "to state the elements to which there is no evidence." Tex. R. Civ. P. 166a(i). The rules of civil procedure do not authorize conclusory motions or general no-evidence challenges to an opponent's case. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

In its motion for summary judgment, the University did not specifically reference Jones's failure-to-accommodate claim or identify any elements of a prima facie case, only that "Jones cannot make out his discrimination and/or retaliation claims (age and religion)" and that "he presents no evidence that he ever complained [of] religious discrimination prior to his non-reappointment." Upon review of the University's motion, we conclude that the substance of the motion establishes that the University did not move for summary judgment on Jones's failure-to-accommodate claim on the ground that there was legally insufficient evidence to support the claim.

In its appellate brief, the University does not contend that the trial court's summary judgment was proper on Jones's failure-to-accommodate claim on the ground that Jones failed to present legally sufficient evidence of a prima facie case. Instead, the University argues that (1) there is no evidence that the University ever asked Jones to refrain from making religious statements *except* during instruction periods and (2) this admonishment cannot serve as the basis for Jones's failure-to-accommodate claim because to allow Jones to continue making such statements would have put the University at risk for a claim of a violation of the Establishment Clause. In effect, the University argues that the risk of an Establishment Clause violation posed an undue burden on the University, such that it could not accommodate Jones's religious practice as a matter of law.

15

The University did not, however, assert in its motion for summary judgment that it could not accommodate Jones's religious practice without undue hardship, an issue that it would have had the burden to establish. *See* Tex. Lab. Code § 21.108.

"It is well settled that a trial court cannot grant a summary judgment motion on grounds not presented in the motion." *Timpte Indus.*, 286 S.W.3d at 310. Because the University did not move for summary judgment, traditional or no-evidence, on Jones's claim that the University failed to accommodate his religious practice under section 21.108 of the TCHRA, the trial court erred to the extent it granted summary judgment on this claim.

## CONCLUSION

We affirm the trial court's judgment with respect to Jones's claim of disparate treatment. Because the trial court erred to the extent it granted summary judgment on Jones's failure-to-accommodate claim, we reverse this portion of the trial court's judgment and remand the case to the trial court for further proceedings.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed in part; Reversed and Remanded in part on Motion for Rehearing

Filed: June 10, 2016

16