# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-11250

United States Court of Appeals
Fifth Circuit

**FILED**
August 15, 2019

Lyle W. Cayce
Clerk

JOE ALVIAR, JR.,

      Plaintiff - Appellant

v.

MACY'S, INCORPORATED, A Corporation of Delaware (Macy's Incorporated), doing business as Macy's; MACY'S RETAIL HOLDINGS, INCORPORATED, And/Or the Entity that Employed Plaintiff as of August 19, 2015,

      Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CV-1633

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Macy's terminated Joe Alviar's employment after he had worked for Macy's for over two years. He sued Macy's under state law for discrimination, retaliation, and failure to accommodate a disability. The district court dismissed Alviar's retaliation and failure to accommodate claims for failure to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-11250

exhaust his administrative remedies. It later granted summary judgment to Macy's on the discrimination claim. We REVERSE the district court's grant of summary judgment.[1]

FACTUAL AND PROCEDURAL BACKGROUND

Alviar served in the United States Army from 2004 to 2013. He was deployed overseas three times, serving as a tank gunner and truck commander in Iraq, then an infantry squad leader in Afghanistan. During his service, he experienced fire fights, people being killed by explosive devices, and other traumatic events. Alviar witnessed multiple friends experience gruesome injuries caused by explosive devices. Alviar rose to the level of Sergeant before being honorably discharged in 2013. He was diagnosed with Post-Traumatic Stress Disorder ("PTSD") after returning to civilian life. There is no question in this case that Alviar suffers from PTSD, and that it was the result of his honorable service to our country.

Macy's employed Alviar from February 2013 until he was terminated in August 2015. Macy's hired Alviar to be an Asset Protection Manager at a store in Fort Worth, Texas. His job responsibilities included "asset protection, payroll expense management, management of [the] Asset Protection team, and the directing of shortage initiatives, investigations and surveillance," among others. Starting in February 2014, Alviar began reporting to John Lillard, the District Director of Asset Protection. In April 2014, Lillard promoted Alviar to the Asset Protection Manager position at the Macy's store in Irving. Alviar had some success there, but Lillard met with Alviar on numerous occasions to discuss performance deficiencies and violations of company policy.

---

[1] We affirm the district court's decision to dismiss Macy's Inc. because it did not employ Alviar. The remaining defendant is Macy's Retail Holdings, Incorporated, which we continue to refer to as "Macy's."

No. 17-11250

Lillard and Alviar met on at least three occasions to discuss deficiencies before Alviar disclosed after an April 2015 meeting that he has PTSD. Alviar told Lillard his PTSD caused recurrent nightmares, trouble concentrating, and a lack of short-term memory. Separately, Alviar also disclosed that his lack of emotion was caused by his PTSD medication. Lillard responded by asking Alviar whether, considering his PTSD, he could handle the Irving store and whether he would like to be transferred to a smaller store. Lillard also made multiple comments concerning Alviar's lack of emotion. The day after Alviar disclosed his PTSD, he sent an email to Lillard stating that he would like to remain at the Irving store. Alviar also in that email committed to working on improving his job performance.

By August 2015, Lillard and Alviar had numerous conversations concerning Alviar's deficient performance, which included company policy violations. Lillard notified Alviar on August 14 that his employment was immediately suspended. Three days later, Alviar sent an email to Cynthia Grizzle, the Regional Vice President of Asset Protection, explaining that he understood why he was being suspended. Alviar also wrote that after he had informed Lillard about his PTSD, his relationship with Lillard immediately "took a turn." Alviar alleged in that email that Lillard had asked him five times since being told about his PTSD whether he was able to handle the demands of the Irving store and whether it was the right job for him.

Lillard and the District Director of Human Resources notified Alviar on August 19 that his employment had been terminated. The decision to terminate Alviar was made by Regional Director of Associate Relations Julia Bachmann and District Director of Human Resources Debbie Atkins, with input from legal counsel Paula Dehan, Regional Vice President of Asset Protection Cynthia Grizzle, and Lillard. Lillard testified by deposition that Alviar had been terminated because he failed to follow Lillard's directions,

3

failed to supervise his team properly, did not properly approve case reports, had organizational and administrative shortcomings, and had violated company policy. Alviar was replaced by someone who does not suffer from PTSD.

Alviar sought unemployment benefits from the Texas Workforce Commission and alleged that he was terminated because he has PTSD. The Workforce Commission ultimately concluded that Alviar was eligible for unemployment benefits because his "separation was caused by a medically verified illness."

Alviar filed this lawsuit in Texas state court against Macy's, Inc., Macy's Retail Holdings, Inc., and Lillard.[2] Alviar claimed that Macy's violated Section 21.051 of the Texas Commission on Human Rights Act ("the Act") when it terminated him because he has PTSD.[3] TEX. LAB. CODE § 21.051. Macy's removed the case to the United States District Court for the Northern District of Texas based on diversity jurisdiction.

Macy's moved for summary judgment, arguing Alviar failed to establish a prima facie case of disability discrimination because he had not demonstrated that his termination was due to his PTSD. Macy's also argued that even assuming Alviar established a prima facie case, Alviar did not show that Macy's reasons for terminating him were pretextual. According to Macy's, Alviar was not terminated because of his PTSD but because he deficiently performed and violated company policy.

---

[2] We previously affirmed the district court's dismissal of Alviar's action against Lillard for tortious interference of contract. *See Alviar v. Lillard*, 854 F.3d 286, 292 (5th Cir. 2017).

[3] Alviar also brought retaliation and failure to accommodate claims under the Act. The district court dismissed those claims for failure to exhaust administrative remedies. Alviar has not briefed those claims on appeal, and as a result, he has waived them. *See, e.g.*, *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 763 n.3 (5th Cir. 2016).

No. 17-11250

The district court granted summary judgment in favor of Macy's, holding that Alviar had done nothing more than "create a weak fact issue as to whether" the "proffered reasons for his termination . . . were the real reasons." The court entered a final judgment dismissing Alviar's disability discrimination claim against Macy's with prejudice.

Alviar timely appealed.

## DISCUSSION

We review the grant of summary judgment *de novo*, "applying the same legal standards as the district court applied to determine whether summary judgment was appropriate." *Lifecare Hosps., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005). Summary judgment should not be granted unless by "viewing the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 236 (5th Cir. 2003). We consider all evidence in the record to ascertain whether there is a dispute of material fact, but we do not determine credibility or weigh evidence. *Id.* We instead "draw all reasonable inferences in favor of the nonmoving party." *Id.* Importantly, "we may affirm the district court's ruling on any grounds supported by the record" and which are consistent with these standards. *Lifecare Hosps., Inc.*, 418 F.3d at 439.

Alviar claims he was discharged due to a qualifying disability in violation of the Act. TEX. LAB. CODE § 21.051(1). "The Legislature intended to correlate state law with federal law in employment discrimination cases when it enacted" the Act. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *see also* TEX. LAB. CODE § 21.001. Indeed, an express purpose of the Act is to "provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act." TEX. LAB. CODE § 21.001(3). Consequently,

5

the Texas Supreme Court "look[s] to federal law to interpret the Act's provisions," *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008), and considers "federal civil rights law as well as [its] own caselaw" when adjudicating disability discrimination claims under the Act, *City of Houston v. Proler*, 437 S.W.3d 529, 532 (Tex. 2014).

In discriminatory treatment cases, a plaintiff can prove discriminatory intent through either direct or circumstantial evidence. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). When a disability discrimination claim is based on circumstantial evidence and has not been fully tried on the merits, Texas law requires us to apply "the burden-shifting analysis established by the United States Supreme Court." *Canchola*, 121 S.W.3d at 739. "Under th[at] framework, the plaintiff is entitled to a presumption of discrimination if she meets the 'minimal' initial burden of establishing a prima facie case of discrimination." *Garcia*, 372 S.W.3d at 634. "Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case 'is not onerous.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

If the presumption arises, that alone may support a finding of liability. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018). That presumption disappears, though, if the employer provides "evidence of a legitimate, nondiscriminatory reason for the disputed employment action." *Id.* If the presumption is thus rebutted, a plaintiff can survive summary judgment by showing "either (1) the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (citation omitted). Under the Act, a plaintiff "need only prove that discrimination was a 'motivating factor' in the employer's decision . . . rather than a 'but for' cause . . . ."

*Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607 (5th Cir. 2007) (citation omitted).  If an employer then shows "that it 'would have taken the same action in the absence of the impermissible motivating factor,' then a court may grant declaratory or injunctive relief but may *not* award damages." *Id.* (quoting TEX. LAB. CODE § 21.125(b)).

We will discuss the following: (I) whether the district court should have ignored Lillard's affidavit; (II) whether Alviar has presented a direct-evidence claim of discrimination; (III) whether Alviar has made a prima facie case under the burden shifting framework; and (IV) if the burden shifts back to Alviar, whether there is some evidence of pretext or that his disability was a motivating factor in his termination.

## I.     *Alviar's Evidentiary Objections*

First, we discuss whether we can rely on the evidence in Lillard's affidavit in analyzing Alviar's claims.  Alviar objected to Lillard's declaration as a sham affidavit and other portions of the record as hearsay.  Alviar did not brief the hearsay issue or explain why the district court's decision was erroneous.  Alviar also failed to explain to the district court why he objected to the evidence.  He therefore has failed to preserve his hearsay objection.  FED. R. EVID. 103(a)(1)(b).  We also hold that the district court did not abuse its discretion in rejecting Alviar's objection to Lillard's affidavit.  *See United States v. Avants*, 367 F.3d 433, 443 (5th Cir. 2004).  Lillard's declaration did not contradict his testimony and was not a sham affidavit introduced solely to create a fact issue on the summary judgment movant's evidence, and we therefore may consider it in deciding this case.

## II.    *Direct Evidence Claim*

To make a direct evidence claim, Alviar must show statements that were (1) related to his disability, (2) "proximate in time" to his termination, (3) "made by an individual with authority over" his termination, and (4) related to the decision to terminate him. *Rodriguez*, 820 F.3d at 764. Alviar claims that Lillard made comments that qualify as direct evidence. Lillard asked Alviar whether he could handle the Irving store after learning of Alviar's PTSD. Lillard also negatively commented on Alviar's lack of emotion, which Alviar asserts is a side effect of his PTSD medication.

These comments could be the basis for inferences about Lillard's attitudes. They are related to the disability and apparently are proximate in time to the termination and the disclosure of the condition. Undisputed record evidence, however, shows that the final decision to terminate Alviar was made by Bachmann and Atkins. We need not decide whether Lillard's statements are sufficient for a direct evidence claim, however, because as we discuss below, Alviar prevails under the burden-shifting framework.

## III.    *Prima Facie Requirement Under Burden-Shifting Test*

Macy's and Alviar disagree on the elements of the prima facie test for disability discrimination under the Act. Alviar argues we should apply a four-part test employed in *Michael v. City of Dallas*, 314 S.W.3d 687, 690-91 (Tex. App.—Dallas 2010, no pet.). Macy's, on the other hand, urges us to apply the three-part standard we used in *Rodriguez*, 820 F.3d at 765. Alviar meets either test. *Rodriguez* requires that Alviar show "(1) he had a disability, (2) he was qualified for the job, and (3) there was a causal connection between an adverse employment action and his disability." *Id.* The parties do not dispute that Alviar had a disability or that he was qualified for the job. Macy's claims that Alviar failed to show a "causal connection." As we explain below in Section IV,

Alviar has produced enough evidence to survive summary judgment on the question whether Lillard's comments about Alviar's PTSD suggest that he harbored discriminatory animus, creating a causal connection between Lillard's alleged animus and the decision by Bachmann and Atkins to terminate Alviar. Alviar therefore has made a prima facia case under the *Rodriguez* standard.

In *Michael*, the Texas appeals court held that in a disability discrimination case, "the plaintiff must show (1) he was a member of a protected class, (2) he was qualified for his employment position, (3) he was subject to an adverse employment decision, and (4) he was replaced by someone outside of the protected class, or he was treated less favorably than similarly situated members of the opposite class . . . ." *Michael*, 314 S.W.3d at 690-91. Macy's replaced Alviar with an individual who does not suffer from PTSD and he was terminated. He therefore makes a prima facie case under the *Michael* standard as well.

After a plaintiff presents a prima facie case, the employer must articulate a legitimate, non-discriminatory reason for the adverse action. *Clark*, 544 S.W.3d at 782. Macy's provided evidence that it terminated Alviar's employment because of performance deficiencies and violations of company policy. Alviar does not argue that Macy's failed to satisfy its obligation to rebut his prima facie case.

What is left under the burden shifting analysis is for Alviar to present some evidence that Macy's stated reason for terminating him "was a pretext for discrimination" or that discrimination was a motivating factor. *See, e.g.*, *Reed*, 701 F.3d at 439-40. We address that issue next.

No. 17-11250

IV.    *Pretext or Motivating Factor Under the Burden-Shifting Test*

In order to defeat summary judgment, Alviar did not need to prove Macy's offered reasons for terminating him were pretextual or that discrimination was motivating factor. He did, though, need to create "a genuine issue of material fact." *Reed*, 701 F.3d at 439. That can be done in two ways under the Act:

> If the defendant proffers a legitimate reason for the adverse employment decision, the burden shifts back to the plaintiff to show either (1) the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor.

*Michael*, 314 S.W.3d at 691. Alviar's claim survives a summary judgment motion, then, if discrimination was one of the motivating factors "regardless of how many factors influenced the employment decision." *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 479-80 (Tex. 2001). Some good reasons joined with one discriminatory reason creates at least a fact issue on whether Macy's decision to terminate Alviar was a pretext for disability discrimination or motivated in part by discrimination.

Whether Macy's would avoid liability if it could show that it would have terminated Alviar even without the alleged discrimination was not briefed. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005). Therefore, we do not consider the point. *Id.*

These standards require us to focus on causation for the termination. Any evidence that someone involved in the decision had a discriminatory motive must be joined with evidence that such motives affected the actual decision. The evidence shows that the ultimate decision was made by Bachmann and Atkins, with input from Grizzle, Lillard, and Dehan. However, Lillard had continuing dialogue with both Grizzle and Atkins about Alviar's performance problems and on the final telephone call, Lillard "was the one who

was providing information." As we will explain, the only person whose motives could be found to be discriminatory, based on inferences from statements he made, was Lillard. Therefore, Alviar must have presented some evidence that a proximate cause — a motivating factor — of this adverse employment action was Lillard's discriminatory beliefs. *See, e.g., Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011). Because we are reviewing a summary judgment, Alviar need at this stage only have presented genuine disputes of material fact that, if resolved in his favor, would have shown that causation. *Machinchick*, 398 F.3d at 355-56.

The principal evidence is what we earlier discussed for Alviar's direct evidence claim, from which reasonable inferences could be taken. The evidence of Lillard's discriminatory attitudes about those like Alviar suffering from PTSD is this. Lillard asked Alviar on at least two occasions whether he could handle the Irving store after learning of his PTSD. Upon first learning of Alviar's PTSD, Lillard asked Alviar in a "hostile" manner whether putting him at the Irving store was a "mistake." About a month later, Lillard asked Alviar, "With your medical disability are you sure you can even handle Irving?" Alviar also wrote in an email to Grizzle that Lillard asked him "over [five] times '[c]an you even handle Irving' or 'with your health issues[,] is this the right job for you?'" Lillard also commented on Alviar's lack of emotion, which Alviar disclosed was caused by his PTSD medication. About a month after that comment, Lillard again mentioned Alviar's lack of emotion, stating it made him angry.

Two questions arise. Is this evidence that Lillard had discriminatory motives, and if so, is there evidence that his attitudes were a motivating factor in the decision to terminate Alviar? As to the first question, we have in another case identified comments by an employee's supervisor in the age-discrimination context that were strongly suggestive he was looking for

younger employees. *Machinchick*, 398 F.3d at 352-53. That supervisor apparently is the one who made the termination decision. *Id.* at 349. The supervisor made "age stereotyping remarks," such as that the plaintiff had "[l]ow motivation to adapt" and that the plaintiff was "inflexible." *Id.* at 353 (alteration in original). The supervisor also asked the plaintiff whether he planned on retiring, which we held could be considered innocuous but also could be considered by a jury to be evidence of age discrimination. *Id.* at 353-54. We held that these comments, "considered as a whole," when made by someone with a major role in the decision, would "allow a reasonable jury to find that his age was a motivating factor in [the employer's] decision to terminate him." *Id.* at 355.

We consider Lillard's comments to be some evidence on which a reasonable juror could rely that Lillard had a motive to discriminate against those who did not display a level of emotion that those taking medication to treat PTSD often could not display. Lillard's repeated questions of whether Alviar, "with [his] medical disability," could "even handle" the Irving store also suggests that Lillard held discriminatory animus towards those with PTSD. This is especially true given that the second time Lillard asked Alviar about his ability to meet expectations at the Irving store, Lillard did not offer an accommodation to transfer Alviar.

Alviar must also have shown that Lillard was able to impact the decision in a sufficient way to have his attitudes become a motivating factor, no matter how many non-discriminatory reasons also affected the decision. If Lillard had "influence or leverage over the official decisionmaker[s], . . . it is proper to impute [his] discriminatory attitude[] to the formal decisionmaker[s]." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000). The influence or leverage that was motivated by discriminatory animus must be a "proximate cause" of the ultimate employment decision. *See Staub*, 562 U.S. at 421; *see*

*also Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 172 (5th Cir. 2014). In the age discrimination context, we have held that "it is appropriate to tag the employer with an employee's age-based animus if the evidence indicates that the worker possessed leverage, or exerted influence, over the titular decisionmaker." *Russell*, 235 F.3d at 227. Even if there has been an independent investigation into the conduct of the terminated employee, if that investigation takes into account a "supervisor's biased report," the report "may remain a causal factor if" the investigation did not determine "that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Staub*, 562 U.S. at 420-22; *see also Zamora v. City of Houston*, 798 F.3d 326, 334-35 (5th Cir. 2015).

In *Zamora*, we found that there was sufficient evidence to show that the suspension of an officer of the Houston Police Department violated Title VII. *See id.* at 335. Evidence suggested that the plaintiff's supervisors, who made negative statements about the plaintiff's credibility and reputation after the plaintiff joined a lawsuit, were retaliatory in nature. *Id.* at 334. The city argued that even if the supervisors were motivated by retaliatory animus, they were not the cause of the plaintiff's suspension. *Id.* We found, however, that those making the decision to suspend the plaintiff relied on the statements from the supervisors and that there was no independent investigation, which meant that the supervisors' retaliatory statements were a proximate cause of the plaintiff's adverse employment action. *Id.* at 334-35.

Here, taking all reasonable inferences in Alviar's favor, a jury could conclude that Lillard was motivated in part to terminate Alviar's employment based on animus towards Alviar's PTSD. The record shows that Lillard was the individual who told Grizzle, Atkins, Dehan, and Bachmann about Alviar's performance deficiencies. Lillard testified that he "had been, throughout the process of being concerned with [Alviar's] performance . . . having a lot of

contact with . . . Cynthia Grizzle, where we would be talking about the issues." Lillard also stated that he had described Alviar's perceived shortcomings to Atkins, who was one of the two individuals with final authority to terminate Alviar. Finally, Lillard testified that he "was the one who was providing information" about Alviar in the phone calls when the decision to terminate Alviar was made.

Like the retaliatory supervisors in *Zamora*, Lillard initiated and provided the information upon which Alviar was terminated. A reasonable jury could determine that Lillard harbored animus towards Alviar because of his disability. The only evidence concerning the decision to terminate Alviar admittedly came from Lillard. Making the inference in favor of Alviar on summary judgment, a reasonable jury could conclude that Alviar's PTSD was a motivating factor in Lillard's discussions with those responsible for terminating Alviar and that because Lillard was the one providing information on Alviar's performance, the process was not for reasons "unrelated to [Lillard's] original biased action." *Staub*, 562 U.S. at 421.

We therefore find that a reasonable jury could conclude that discrimination was at least a "motivating factor" in terminating Alvair, and therefore Alviar presented at least a material dispute of fact whether discrimination was a motivating factor in his termination. As such, Alviar has carried his summary judgment burden on his disability discrimination claim against Macy's under the Act and we REVERSE and REMAND the decision of the district court as to that claim.