## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

No. 15-20390

RAYMOND ALBERT RODRIGUEZ,

> Plaintiff - Appellant

v.

ELI LILLY AND COMPANY; LILLY USA, L.L.C.; JULIA DAWN RAMOS,

> Defendants - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, SMITH, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Raymond Rodriguez challenges summary judgment for Eli Lilly. The district court found that Eli Lilly did not retaliate against Rodriguez under the Federal Medical Leave Act ("FMLA") when it terminated Rodriguez. It also found that his termination was not discrimination under the Americans with Disabilities Act ("ADA"). Because Rodriguez cannot show that Eli Lilly's legitimate reasons for termination following the investigation were pretext for discrimination or retaliation, we AFFIRM.

## I.

Raymond Rodriguez was employed by Eli Lilly from 2000 to 2013, working as a pharmaceutical sales representative from June 2012 to October

No. 15-20390

2013. During his tenure as a sales representative, Rodriguez was diagnosed with post-traumatic stress disorder ("PTSD").[1]

Thomas Bills, one of Eli Lilly's Senior District Sales Managers, was Rodriguez's supervisor. Bills reported that Rodriguez's performance during his first twelve months as a sales representative was "nothing short of miraculous," and that he excelled in his position. On July 1, 2013, Julia Ramos became Rodriguez's supervisor. When Bills and Ramos learned of the transfer in April 2013, they discussed Rodriguez's PTSD. Ramos expressed concern about working with Rodriguez because she knew that Bills and Rodriguez had an arrangement where Rodriguez would call Bills anytime he became frustrated, which was a symptom of his PTSD. During his deposition, Bills testified that Ramos said "I don't know if I can handle [Rodriguez]."

After Rodriguez was transferred to Ramos's supervision, Rodriguez became Syreeta Barrett's territory sales partner. On August 31, 2013, Barrett emailed Ramos expressing several concerns about Rodriguez. Barrett noted that Rodriguez "attempted to bully [her] into doing unethical/non compliant actions." These actions included falsely reporting doctor visits and not properly recording who attended reimbursed meals. Barrett also noted that Rodriguez encouraged her to ignore her TempTale monitor.[2] After receiving Barrett's email, Eli Lilly began a formal investigation into these allegations.

Melissa Popa, the human resources consultant responsible for the investigation, verified many of Barrett's allegations. She discovered that Rodriguez recently recorded a visit with a doctor that did not occur, ignored

---

[1] Rodriguez served in the Marine Corps from 1989 to 1995 and has served in the Army National Guard since 2006, deploying to Iraq from March 2008 to February 2009 and Afghanistan from June 2009 to July 2010.

[2] Sales representatives that sold Humalog, an insulin product, were required to refrigerate the product and verify twice a day that it was kept at the appropriate temperature by checking TempTale monitors.

several TempTale monitor alarms, and failed to accurately report how many participants attended three reimbursed lunches. During the investigation, Rodriguez stated that he checked the TempTale alarm every day and that the alarm had not gone off. Rodriguez also testified that he understood company policies regarding expensing meals. After being confronted about the inaccurate report of the doctor's visit, Rodriguez stated that it was a clerical error. On October 4, 2013, Ramos reported to Human Resources that she was concerned that Rodriguez was unstable. Following the conclusion of the investigation, Eli Lilly terminated Rodriguez's employment on October 17, 2013.

Sometime between September 18, 2013 and October 17, 2013, Rodriguez applied for leave under the FMLA after a visit to the emergency room. He received notice that his application was approved on October 17, 2013, the day he was terminated.

Rodriguez sued in April 2014, asserting a retaliation claim under the FMLA, 29 U.S.C. § 2601, *et seq.* He later amended his complaint to include discrimination and retaliation claims under the ADA, 42 U.S.C. § 12101, *et seq.* Eli Lilly filed a motion for summary judgment. The district court granted Eli Lilly's motion and dismissed each claim, finding that Rodriguez did not establish a causal link between his termination and his PTSD, and that Rodriguez had not shown that Eli Lilly's legitimate business reasons for his termination were pretext for discrimination or retaliation. Rodriguez appealed, challenging only the dismissal of his discrimination claim under the ADA and his retaliation claim under the FMLA.[3]

---

[3] The district court also dismissed Rodriguez's retaliation claim under the ADA and his claim of interference with his FMLA rights. Rodriguez did not brief these claims on appeal, and as a result, they are waived. *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008) (holding that a party waives an argument on appeal if it "fails to adequately brief it").

No. 15-20390

## II.

### A. Standard of Review

We review summary judgment de novo, applying the same standard as the district court. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing summary judgment, we must consider all of the evidence in the light most favorable to the non-moving party, Rodriguez. *Kemp*, 610 F.3d at 234.

### B. ADA Discrimination Claim

The ADA prohibits employers from discriminating against an employee on the basis of a disability as defined by the Act. 42 U.S.C. § 12112 (2009). "In a discriminatory-termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).[4] Rodriguez challenges the district court's determination that he did not present direct evidence of discrimination or satisfy the requirements of *McDonnel Douglas*.

#### 1. Direct Evidence

Rodriguez argues that the district court incorrectly held that the conversation between Ramos and Bills regarding his PTSD was not direct evidence of discrimination. "Where a plaintiff offers remarks as direct evidence, we apply a four-part test to determine whether they are sufficient to

---

[4] The district court found that under the ADA Amendments Act of 2008, Rodriguez was disabled because he presented evidence that his PTSD "substantially limited major life activities in comparison to the general population." The parties do not contest this finding on appeal.

4

overcome summary judgment." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)).  To qualify as direct evidence of discrimination, workplace comments "must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (alterations in original) (quoting *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999)).

During Ramos's conversation with Bills, Ramos expressed concern about supervising Rodriguez because of the arrangement Bills and Rodriguez had regarding the symptoms of his PTSD.  This conversation was likely about his disability and was made by employees that had authority to terminate Rodriguez.  However, the conversation was not proximate in time or related to Rodriguez's termination.  The conversation occurred when Ramos became aware of Rodriguez's transfer, in April 2013.  Rodriguez was terminated in October 2013.  This court has discounted isolated remarks made within as little as four months of an employment decision.  *See Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 351–52 (5th Cir. 2007) (six months); *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 273–74 (5th Cir. 2006) (four months).

Rodriguez also argues that Ramos's remark that she believed he was unstable "closes the temporal gap" between the Ramos/Bills conversation and his termination.  Rodriguez did not show that this comment was causally related to his termination.  Further, this evidence does not qualify as direct evidence under this court's case law.  We have defined direct evidence as "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).  The conversation between Ramos and Bills and Ramos's

remarks regarding Rodriguez's stability cannot meet this standard and therefore cannot be considered direct evidence of Ramos's discriminatory animus. *See also Jones*, 212 F. App'x. at 274 ("The need to infer or presume the causal connection means that the statements are not direct evidence of intentional race discrimination."). Moreover, even if Ramos's comment and the conversation between Ramos and Bills were direct evidence of discrimination, this evidence is "insignificant in comparison to the evidence of" Eli Lilly's legitimate reasons for his termination, and "thus is insufficient, on its own, to establish discrimination." *Auguster*, 249 F.3d at 405.

### 2. *McDonnell Douglas* Burden Shifting

Rodriguez next argues that even if there was no direct evidence of discrimination due to disability, he created a genuine dispute of fact under *McDonnell Douglas*. Under *McDonnell Douglas*, Rodriguez must prove (1) he had a disability, (2) he was qualified for the job, and (3) there was a causal connection between an adverse employment action and his disability. *LHC Grp.*, 773 F.3d at 697. If Rodriguez meets this burden, Eli Lilly can rebut the presumption of discrimination by articulating legitimate business reasons for the adverse action. *Id.* at 701. Finally, if Eli Lilly provides a legitimate reason, Rodriguez must offer evidence to show that reason was pretext for discrimination. *Id.* at 702. "To carry this burden, the plaintiff must rebut each nondiscriminatory . . . reason articulated by the employer." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

The parties do not contest the first and second elements of the *McDonnell Douglas* prima facie case on appeal. However, the parties do dispute whether Rodriguez established a causal connection between his PTSD and his termination. Even if the evidence presented by Rodriguez was enough to show a causal connection, Rodriguez's claim fails because he cannot show that the

legitimate reasons Eli Lilly presented for his termination were pretext for discrimination.

Eli Lilly presented at least five reasons for Rodriguez's termination: (1) he recorded a sales visit to a physician that did not occur, (2) he violated the business meal policy by expensing for more attendees than were recorded in sign-in sheets, (3) he failed to monitor the TempTale device and report alarms, (4) he was untruthful about these violations during the investigation, and (5) Barrett reported that he encouraged her to violate these policies in a similar manner. "At summary judgment, '[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive.'" *LHC Grp.*, 773 F.3d at 702 (alteration in original) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

Taking the evidence in the light most favorable to Rodriguez, there may have been a dispute of fact as to whether his violation of the business meal policy and his failing to monitor the TempTale alarm alone were worthy of credence. Bills testified that he had never written up a representative regarding the failure to properly expense meals. In addition, Bills testified that there were frustrations with the TempTale monitors and that he had previously "advised some of the HR people that, you know, we can't discipline anybody off of the Temp-Tell [sic] because it's so bad and we haven't distributed it to the entire sales force." Although Rodriguez presented evidence that may have called the credence of these reasons into question, Rodriguez did not present any evidence that suggested he did not violate both policies. He also testified that he understood each policy and was properly trained on them.

In addition, Rodriguez did not contest Eli Lilly's finding that he recorded a sales visit with a physician that did not occur. Instead, he claimed that it

was simply a clerical error.  Most surprisingly, Rodriguez did not present any evidence contradicting Barrett's email to Ramos in which she alleged that he encouraged her to falsify call records and to not monitor her TempTale alarms. In fact, he did not mention this reason or incident in his briefs to either this court or the district court.  In addition, Rodriguez did not contest Eli Lilly's allegation that he was untruthful during the investigation.  Eli Lilly presented evidence that Rodriguez stated that he "checked the TempTale monitor every day and that it had not gone off."  However, the record shows that this statement was untruthful because the alarm had gone off at least twice. Because Rodriguez did not contest at least two of the five business reasons for his termination and did not provide evidence showing any of the five reasons were false, Rodriguez did not establish a genuine dispute of material fact as to whether these reasons were pretext for discrimination due to his PTSD.  *See McCoy*, 492 F.3d at 557.

## C. FMLA Retaliation Claim

Rodriguez also contests summary judgment for Eli Lilly on his FMLA retaliation claim.  The FMLA prohibits employers from acting against an employee for taking or attempting to take leave under the Act.  29 U.S.C. § 2615(a)(1).  This court also analyzes FMLA retaliation claims under the *McDonnell Douglas* burden-shifting framework.  *Wheat v. Fl. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016).  The parties do not contest the first two elements of the prima facie case; Rodriguez engaged in a protected activity by requesting leave under the FMLA, and Eli Lilly terminated him soon after that request.  However, the parties do contest the causal link between the two events.  Again, even if this evidence presented by Rodriguez, including the proximity in time between the two events, is enough to conclude that the "the protected activity and the adverse employment action are not completely unrelated," *Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d

574, 583 (5th Cir. 2006), Rodriguez cannot show that the same five reasons for termination proffered by Eli Lilly were pretext for retaliation. The same analysis for pretext applies to his FMLA claim as was presented above in regard to his ADA claim. As a result, Rodriguez did not create a genuine dispute of material fact as to whether Eli Lilly terminated him in retaliation for his request for FMLA leave.

## III.

For the foregoing reasons, we affirm summary judgment for Eli Lilly.