# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20558
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
June 5, 2018

Lyle W. Cayce
Clerk

TOLULOPE ODUBELA,

     Plaintiff–Appellant,

v.

EXXON MOBIL CORPORATION,

     Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-3053

Before JOLLY, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Tolulope Odubela sued his former employer, Exxon Mobil Corporation (Exxon Mobil) for race discrimination under 42 U.S.C. § 1981. The district court held that Odubela failed to provide sufficient direct or circumstantial evidence to raise genuine issues of material fact and granted summary judgment for Exxon Mobil. We affirm.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20558

## I

Our recitation of the facts is drawn primarily from Odubela's First Amended Complaint.  Odubela is a black male from Nigeria.  He identifies as a member of the Sub-Saharan African race.  Odubela initially worked at Exxon Mobil as an intern and subsequently was hired as a full-time Public & Government Affairs (P&GA) advisor in 2008.  Odubela was initially supervised by Alexandra Roberts-Judd.  Roberts-Judd never advised Odubela that his performance was sub-standard, but told him that he needed to take more ownership of his projects and to build relationships with clients.  Later, she expressed concern to Odubela about his timeliness when publications that he edited were delayed.

In early 2010, Nora Scheller became Odubela's supervisor.  Although they met weekly, Odubela claims that Scheller did not initially tell him his work was deficient.  Odubela and Scheller travelled on business in October 2010.  During the trip, Odubela told Scheller he was from Nigeria and that he attended university there.  The parties dispute whether Scheller knew that Odubela was from Nigeria before the trip.

Shortly thereafter, Scheller and Odubela met for Odubela's scheduled performance review.  During this meeting, Scheller informed Odubela that he ranked in the bottom third of his peer group for the period between April 2009 and March 2010.  This ranking was based, in part, on feedback provided by Odubela's "Knowledgeable Others" (KOs)—people Odubela had selected to provide anonymous feedback about his work during the previous year.  Scheller told Odubela that his KOs had noted various issues with his performance.  She suggested he examine whether he was a "good fit" for Exxon Mobil and that he explore other opportunities.

Over the course of his employment, Odubela had expressed willingness to work for Exxon Mobil in Nigeria or another country in Africa on multiple

2

occasions. As an intern, Odubela told at least two Exxon Mobil employees that he would be interested in a post in Nigeria. During his first year as an employee, he told Roberts-Judd that he would be willing to work for Exxon Mobil in Africa. In the October 20 meeting, Scheller also asked Odubela if he had considered moving back to Nigeria on assignment from Exxon Mobil. Odubela told Scheller that he would be interested in an assignment in Nigeria, so long as it did not hinder his global opportunities with the company. Scheller said that she was not then aware of opportunities in Nigeria, but that Odubela should take any opportunity that arose because she believed that he did "not have what it takes to make it here." Odubela claims that when he asked for clarification, Scheller confirmed that she felt Odubela did not "have what it takes to make it here [in the United States]." Over the next hour, Scheller shared her concerns about Odubela's performance.

Beginning in January 2011, Odubela was placed on a six-month "performance improvement plan" (PIP), a process designed to assist employees in improving performance and in obtaining feedback from supervisors. Odubela's PIP stated that his written communication skills, time management, organization, and attention to detail were deficient. It also provided that Odubela "must demonstrate substantial, sustained improvement or it will be necessary for the company to take further action" and that if his performance continued to fall short of expectations, he might be terminated. During the PIP period, Odubela and Scheller met twice a month to discuss his progress. Odubela claims that the meetings were ineffective, that Scheller spoke in generalities about his deficiencies instead of providing concrete examples, and that she repeatedly told him he was not a "good fit" for Exxon Mobil.

In one of these meetings, held in March 2011, Scheller allegedly asked Odubela whether he was depressed and told him that it seemed like he was

"checking out" from the company.  Odubela alleges that Scheller told him to ask himself "how to be a better person."  Scheller further explained that Odubela's "lack of eye contact" concerned her.  Several days later, Odubela went to Scheller's office to voice his concerns about her comments that he was checking out and often failed to make eye contact.  He told Scheller that he felt his efforts to improve demonstrated that he was not checking out.  Odubela also explained that eye contact is considered rude in his culture.

During another meeting in April, Scheller told Odubela that feedback from his KOs was not encouraging.  She again suggested that he was not a good fit for Exxon Mobil and that he should explore other opportunities.  At a meeting in May, Odubela asked to see the KOs' specific comments so he could improve any deficiencies.  Scheller told him that the comments were to remain confidential, but that concerns about his communication skills were prominent in the feedback.  Odubela then contacted Exxon Mobil's Human Resource Department and expressed his concerns regarding Scheller's comments about his lack of eye contact and inability to "make it" in the United States.  He also expressed his belief that Scheller had targeted him because he was from Nigeria.  Emily Dunckle, an employee in Human Resources, told Odubela that Exxon Mobil took his concerns seriously and would investigate.  Though Dunckle concluded that Scheller had "no intent to discriminate," she altered the format of the PIP meetings so that Odubela would have more of a lead role.

On September 14, 2011, Scheller and Caitlin Robinson, who had become Odubela's contact in Human Resources, informed Odubela that his employment was terminated due to poor work performance.  Odubela's responsibilities were divided among remaining P&GA advisors or outsourced to a third-party vendor.

Odubela sued Exxon Mobil in Texas state court in September 2015, and Exxon Mobil removed to federal court.  After discovery, Exxon Mobil moved for

No. 17-20558

summary judgment, and the district court granted that motion. The court held that Odubela failed to present direct or circumstantial evidence raising a genuine issue of material fact regarding whether Scheller intentionally discriminated against him on the basis of race. Odubela appeals.

## II

We review the district court's grant of summary judgment de novo.[1] Summary judgment is proper if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Genuine issues of material fact exist when a reasonable jury could rule in the non-movant's favor on an issue that could affect the outcome of the case.[3] The court views facts and inferences in the light most favorable to the non-moving party, but ignores "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[4] It will not evaluate credibility or weigh evidence.[5] "If the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case."[6] If the non-movant does not show a genuine issue of material fact on an element essential to his case, summary judgment is appropriate.[7]

---

[1] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (citing *United States v. Lawrence*, 276 F.3d 193, 195 (5th Cir. 2001)).

[2] FED. R. CIV. P. 56.

[3] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005)*; see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)).

[5] *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010).

[6] *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (quoting *Miss. River Basin All. v. Westphal,* 230 F.3d 170, 174 (5th Cir. 2000)).

[7] *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

### III

The sole issue on appeal is whether the district court properly granted summary judgment on Odubela's § 1981 race discrimination claim. Section 1981 claims are available to members of "identifiable classes of persons who are subject to intentional discrimination solely because of their ancestry or ethnic characteristics."[8] Because § 1981 claims and Title VII claims "require the same proof"—intentional discrimination—"to establish liability," we consider Odubela's claim under this shared legal standard.[9] A plaintiff may prove discrimination through direct evidence or circumstantial evidence, or both.[10] Odubela failed to present direct or circumstantial evidence sufficient to prove that Exxon Mobil or its employees intentionally discriminated against him because of his race.

### A

Direct evidence is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."[11] Such evidence is rare in discrimination cases.[12] When a plaintiff presents workplace comments as direct evidence, "we apply a four-part test to determine whether they are sufficient to overcome summary judgment."[13] Odubela's evidence consists of

---

[8] *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987); 42 U.S.C. § 1981.

[9] *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 422 n.1 (5th Cir. 2000); *see also Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (per curiam) ("Because claims brought pursuant to Title VII and § 1981 are 'governed by the same evidentiary framework,' such that the analyses under both statutes are substantively the same, we analyze . . . Title VII and § 1981 claims together." (quoting *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 281 n.7 (5th Cir. 2004))).

[10] *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010); *see also Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016).

[11] *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016) (quoting *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002)).

[12] *Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 180 n.4 (5th Cir. 1999) (considering a Title VII sex discrimination claim).

[13] *Rodriguez*, 820 F.3d. at 764 (quoting *Reed v. Neopost USA, Inc.,* 701 F.3d 434, 441 (5th Cir. 2012)).

comments made to him by Scheller, his supervisor. "For comments in the workplace to provide sufficient evidence of discrimination, they must be (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the termination[]; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue."[14] "Comments that do not meet these criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment."[15]

Scheller's comments do not relate to Odubela's race. They are not direct evidence of discrimination but merely stray remarks that cannot alone defeat summary judgment.

Odubela argues that Scheller's alleged comments questioning his ability to "make it" in the United States, her inquiries about his interest in a position in Nigeria, and her remarks about his failure to make eye contact were related to his Sub-Saharan African race. He also contends that Scheller told him to be a "better person" and that this was a critique of his ethnic and cultural background. We disagree. Nothing links Scheller's purported remarks questioning Odubela's ability to "make it" in the United States with his Sub-Saharan African race. Further, as the district court correctly noted, Scheller's inquiries about Odubela's interest in working for Exxon Mobil in Nigeria do not relate to his race. By his own admission, Odubela had expressed willingness to work for Exxon Mobil in Nigeria to multiple people during his

---

[14] *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (internal quotations, citations, and alterations omitted).

[15] *Cal-W. Packaging Corp.*, 602 F.3d at 380 (holding that age-discrimination plaintiff's evidence, which consisted of workplace remarks, did not constitute direct evidence of discrimination); *see also Auguster*, 249 F.3d at 404-05 (explaining that this court's "stray remarks doctrine" survived the Supreme Court's decision in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)).

No. 17-20558

internship. As an employee, Odubela also told Roberts-Judd he was interested in working in Africa at some point in his career. Even if Odubela had not previously stated a desire to work in Nigeria or Africa, Scheller's inquiry about Odubela's interest in opportunities in his native country does not, without inference, relate to his race.

As to Scheller's comments about Odubela's lack of eye contact, while Odubela argues that he informed Scheller that eye contact is considered rude in his culture, he does not argue that Scheller had that information before she expressed concern to the Human Resources Department.

Alternatively, assuming that Scheller's alleged doubts about Odubela's ability to succeed in the United States were race-related, Odubela alleges that she expressed those doubts in October 2010—nearly one year before Odubela's September 2011 termination. This court has held workplace comments made six months before an adverse employment action to be stray remarks.[16] We reach the same conclusion here. Scheller's alleged comments about Odubela's ability to "make it" in the United States were not proximate in time to his termination. There is no direct evidence of discrimination.

**B**

To prove intentional discrimination by circumstantial evidence, a plaintiff must prevail under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[17] Under this framework, "a plaintiff must first establish a *prima facie* case of discrimination."[18] If the

---

[16] *Rodriguez*, 820 F.3d at 764 (holding that a conversation held six months before plaintiff was terminated was not "proximate in time or related to [the] termination"); *see also Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 351-52 (5th Cir. 2007) (six months); *Cal-W. Packaging Corp.*, 602 F.3d at 380 (one year).

[17] *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[18] *Auguster*, 249 F.3d at 402.

plaintiff succeeds, there is a presumption of discrimination and the burden of proof shifts to the employer to "articulate a legitimate, nondiscriminatory reason for its actions."[19]   If the employer produces a legitimate alternative reason, "the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is . . . a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct," with the plaintiff's race being another "motivating factor."[20]

Odubela fails to establish a *prima facie* case that Exxon Mobil discriminated against him.  To prove his termination was motivated by racial discrimination, Odubela must show that (1) he is a member of a protected class; (2) he was qualified for his position at Exxon Mobil; (3) he experienced an adverse employment action; and (4) he was replaced by someone outside of the protected class or treated less favorably than similarly situated colleagues.[21]   Odubela established the first three elements by presenting evidence that he is a member of the Sub-Saharan African race, that he was qualified for his job, and that his employment was terminated.  However, the district court held that Odubela failed to meet the fourth element because he provided no evidence that he was replaced by someone outside of the protected class or that he was treated differently than peers with similar performance rankings.

On appeal, Odubela does not argue that the district court erred in this regard, nor does he articulate why he believes that he presented sufficient circumstantial evidence of discrimination to raise a genuine issue of material fact.  The few conclusory references to circumstantial evidence in Odubela's

---

[19] *Alvarado*, 492 F.3d at 611 (citing *Reeves,* 530 U.S. at 142).

[20] *Id.*

[21] *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

brief state only that he "offered both direct and circumstantial evidence in order to meet his *prima facie* case of race discrimination."  Because Odubela does not argue that he was replaced by individuals outside of his protected class in his briefing, he has forfeited that argument and cannot establish a *prima facie* case of discrimination.[22]

\* \* \*

We AFFIRM the judgment of the district court.

---

[22] *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 763 n.3 (5th Cir. 2016) (citing *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008)); *N.W. Enters. Inc. v. City of Hous.*, 352 F.3d 162, 183 n.24 (5th Cir. 2003) ("A litigant's failure to provide legal or factual analysis results in waiver." (citing *United States. v. Green*, 964 F.2d 365, 371 (5th Cir. 1992))); *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 483 (5th Cir. 2002) ("[C]ontentions not briefed are waived and will not be considered on appeal." (citation omitted)).