# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20168
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
November 14, 2018

Lyle W. Cayce
Clerk

TRAVIS SIMMONS,

      Plaintiff - Appellant

v.

SAIA MOTOR FREIGHT LINE, L.L.C.,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No.  4:15-CV-1010

Before DAVIS, HAYNES, and GRAVES, Circuit Judges.[1]
PER CURIAM:[*]

Plaintiff-Appellant Travis Simmons ("Simmons") appeals the district court's grant of summary judgment on his age discrimination claim in favor of Defendant-Appellee SAIA Motor Freight Line, L.L.C. ("SAIA"). Finding no reversible error, we AFFIRM.

---

[1] Judge Haynes concurs in the judgement only.

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20168

## I. Background and Procedural History

Simmons began working for SAIA in 1976. He started his employment as a "dock worker/city driver," and later became a line haul truck driver. In May 2012, Sam Lynch, a Safety Manager for SAIA's Houston Terminal, commented to Simmons that SAIA was spending too much on insurance for him and that he had too many injuries. He told Simmons, "SAIA is getting rid of all you old Bucks and bringing in young Bucks to take your place." Simmons was 61 at the time. Lynch then told Simmons, "SAIA wants young, productive drivers in good health." About a week later, Don Langford, an Assistant Terminal Manager, and David Hanlon, an Operations Manager, approached Simmons and asked, "Travis, don't you think it's time to retire?" Hanlon then commented, "He does not need to retire, just go home, because he can't handle this job." When Simmons responded he did not know what Langford and Hanlon were talking about because he did not steal from SAIA, Hanlon remarked, "Yes, you do steal from SAIA, always being hurt, always costing SAIA a lot of money and complaining about everything, just go home man."

Several months later on October 9, 2012, Lynch again observed that SAIA was spending too much on Simmons and he had too many injuries. He again commented about SAIA getting rid of "old bucks" in favor of "young bucks." Lynch stated SAIA wanted young and productive drivers and that SAIA considered Simmons a "walking liability." He commented that no black drivers had ever been able to retire from SAIA's Houston facility. That same night, Langford showed up uninvited to the church where Simmons' grandchild was being baptized. In the parking lot after the baptism, Langford told Simmons and his wife that Simmons should consider retiring soon. When Simmons said he wanted to work until he was 65, Langford responded that "time may not be on your side" and that no black driver had ever retired from SAIA's Houston Terminal. The next evening, Delbert Bryer, the Houston

2

No. 18-20168

Terminal Manager, suggested Simmons should retire before being replaced by a younger driver. Two other SAIA managers separately overheard Langford saying SAIA needed to get rid of the older drivers, and in one instance Langford was specifically referring to Simmons.

Less than a month later on November 1, 2012, Simmons was involved in an accident while driving a line haul route. The accident resulted in the rear trailer of the truck flipping over and disconnecting from the lead trailer. Simmons reported the incident to SAIA and stated he was forced off the road by an independent trucker, a practice about which he had previously complained to SAIA's CEO. Tom Lillywhite, the Regional Human Resources Manager, spoke with Simmons the day after the accident. After speaking with Simmons, Lillywhite concluded no other driver was involved in the accident and Simmons instead fell asleep at the wheel. The incident was also investigated by Sheldon McCabe, a Regional Safety Manager out of Tennessee. McCabe conducted the investigation, rather than Lynch (who would normally have done the investigation), at Simmons' request. McCabe reviewed the insurance adjustor's report, Lillywhite's report, and interviewed Simmons. McCabe agreed with Lillywhite's conclusion that no independent trucker had been involved and that Simmons had fallen asleep while driving.

After the incident, a conference call took place with Lillywhite, Bryer, McCabe, and three other SAIA management team members, none of whom are alleged to have made any sort of comments to Simmons. During this call, McCabe and Lillywhite noticed inconsistencies in Simmons' statements made during their respective interviews of him. Simmons' accident was deemed a major accident because it was considered preventable and it involved significant property damage. Based on the information from the conference call, the reports, and his conversation with Simmons, Lillywhite determined Simmons' should be terminated. SAIA's policy is for a Human Resources

3

manager to make the final decision regarding an employee's termination. On November 20, 2012, Lillywhite and Bryer called Simmons to inform him of the termination decision. Lillywhite told Simmons he could resign in lieu of termination. On November 21, 2012, Simmons' employment was terminated.

Simmons filed suit in district court, alleging SAIA terminated his employment because of his age, race and disability, in violation of the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et seq.* After discovery, SAIA filed a motion for summary judgment. Simmons filed a response in opposition as to his age discrimination claim, but voluntarily dismissed his race and disability discrimination claims. Simmons now appeals the district court's grant of summary judgment in favor of SAIA.

## II. Standard of Review

This court reviews a grant of summary judgment *de novo*, applying the same summary judgment standard as the district court below. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (citing *United States v. Lawrence*, 276 F.3d 193, 195 (5th Cir. 2001)). "Although summary judgment is not favored in claims of employment discrimination, it is nonetheless proper when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1164 (5th Cir. 1993) (quoting Fed. R. Civ. P. 56) (internal citations omitted). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Crawford v. Formosa Plastics Corp., Louisiana*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "We view the evidence in the light most favorable to the non-moving

No. 18-20168

party and avoid credibility determinations and weighing of the evidence." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010).

### III. Discussion

On appeal, Simmons claims the district court erred by applying the burden shifting framework of *McDonnel Douglas*[2] to his age discrimination claim. He argues that because he brought forth direct evidence of discrimination, he did not need to establish a *prima facie* case of discrimination; the direct evidence he presented was sufficient by itself for his claim to withstand summary judgment.

Under the ADEA, "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish an ADEA claim, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)). Direct evidence is evidence that, if believed, would prove discrimination without any inferences or presumptions. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). This court applies a four-part test to determine whether comments

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) (discussing how a plaintiff with only circumstantial evidence of discrimination must first establish a *prima facie* case of discrimination before the burden shifts to the defendant to identify a non-discriminatory reason for the adverse employment action). In his brief, Simmons refers several times to the burden shifting framework of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); however, he appears to be discussing the *McDonnell Douglas* framework. The *Price Waterhouse* mixed-motives framework (used when an employee suffers an adverse employment action based on both permissible and impermissible considerations) does not apply in age discrimination cases under the ADEA because age must be the but-for cause of the adverse employment action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 173 (2009).

made in the workplace constitute direct evidence of discrimination and are therefore sufficient to overcome summary judgment. *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016) (quoting *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012)). To qualify as direct evidence, the workplace comments must be: 1) related to the plaintiff's age; 2) proximate in time to the plaintiff's termination; 3) made by individuals with authority over the termination decision; and 4) related to the termination decision. *Id.* (quoting *Auguster v. Vermillion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001)). Comments that do not meet these criteria are considered "stray remarks" and are insufficient on their own to defeat summary judgment. *Jackson*, 602 F.3d 374, 380 (5th Cir. 2010).

Simmons argues the statement by Delbert Bryer that he should consider retiring before SAIA replaced him with a younger driver qualifies as direct evidence.[3] According to Simmons, this comment meets the four-part test and constitutes direct evidence of discrimination because it was made less than 60 days before Simmons was terminated, Bryer participated in "the discussion concerning Simmons' termination," and the statement related to Simmons' termination because the *other* SAIA managers "openly discussed" and confirmed "SAIA's 'plan' to replace older drivers."

We assume *arguendo* Bryer's comment relates to Simmons' age and was proximate in time to his termination and turn to the third and fourth factors. As for the third factor, the record does not support an inference that Bryer had authority over the decision to terminate Simmons. Bryer participated on a conference call with five other people where the accident and insurance adjuster's report were discussed. During this call, McCabe and Lillywhite

---

[3] Simmons does not argue that any of the age-related statements by the other SAIA managers constitute direct evidence, most likely because none of the other statements were made by anyone who even arguably had the authority to terminate his employment.

6

noted some inconsistencies in Simmons' statements during the investigation. As a result of this information, and the fact that Simmons' accident was deemed a major accident, Lillywhite—not Bryer—made the final decision to terminate Simmons' employment. At most, Bryer can be said to have participated in the discussion about Simmons' termination.

However, even if it could be said that Bryer participated in the *decision* to fire Simmons and that participation is sufficiently equivalent to authority, there is nothing supporting an inference that Bryer's statement, made prior to Simmons' accident, related to Lillywhite's decision to terminate Simmons. Nor can the age-related comments by the other managers transform Bryer's statement from a stray remark about retirement into direct evidence of Bryer's discriminatory intent regarding the specific decision to terminate Simmons after his accident. This is not to say that Bryer's and the other managers' statements have no evidentiary value; merely that they qualify as *circumstantial* evidence rather than *direct* evidence. Accordingly, the district court did not err in concluding that Simmons did not present direct evidence of age discrimination and that the *McDonnell Douglas* framework applied to Simmons' claim.[4]

The district court's judgment is AFFIRMED.

---

[4] Simmons does not contend he satisfied the *McDonnell Douglas* framework; therefore, we do not address that issue.