# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20353
Cons./w No. 18-20592

United States Court of Appeals
Fifth Circuit

**FILED**

October 30, 2019

Lyle W. Cayce
Clerk

OTIS GRANT,

> Plaintiff - Appellant

v.

HARRIS COUNTY,

> Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Texas
USDC Nos. 4:16-CV-3529
and 4:18-CV-1953

Before OWEN, Chief Judge, and JONES and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge:*

In this consolidated appeal, Appellant Otis Grant challenges various rulings made by two district courts. Grant originally filed suit against Appellee Harris County (the "County") following the termination of his employment, alleging discrimination, retaliation, and harassment pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* Grant

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

later filed a separate suit against the County pursuant to Title VII, 42 U.S.C. § 2000e *et seq.* Both courts granted summary judgment in favor of the County. Grant appeals those and other rulings. We **AFFIRM** both judgments.

## BACKGROUND

The Harris County Juvenile Probation Department operates a Juvenile Probation Center (the "Center") that houses approximately 500 children who have been remanded to state custody because they pose a threat to themselves or others. From 2005 to 2013, the County employed Grant as a Juvenile Supervision Officer ("JSO") in the Center. Grant's responsibilities as a JSO were wide-ranging, but Grant was generally responsible for the supervision and security of the children housed at the Center. At times, this required Grant to monitor at-risk children and maintain accurate observation logs, detailing the exact time he performed a wellness check and what the at-risk child was doing at that time. Grant was also required to initial the observation log each time he made an entry.

Between 2008 and 2012, Grant's performance reviews and reports from supervisors noted multiple problems with Grant's supervision of children in his care. Then, in October 2012, Grant was suspended for five days after a supervisor reported that Grant had not properly completed his observation logs and had falsely recorded his observation times. In early 2013, following another alleged policy violation, Grant was given a "Last Warning Letter," informing Grant that any further violations would result in his termination. On November 23, 2013, after Grant again allegedly falsified his observation logs and violated the County's Electronic Devices Policy, the County moved to terminate Grant's employment.

Grant tells a different story. He does not dispute that he received negative performance reviews and reports from supervisors. But Grant alleges

he was singled out by the County for reporting that his supervisor was discriminating against other employees—not Grant—on the basis of their national origin.  Grant, who has Type 2 Diabetes, also alleges that the County retaliated against him by depriving him of accommodations for his diabetes and harassed and ultimately terminated him because of his diabetes.  Based on these allegations, Grant filed a complaint with the Equal Employment Opportunity Commission.  On February 17, 2016, Grant received a right-to-sue letter from the EEOC, authorizing him to sue under both the ADA and Title VII.[1]

On May 23, 2016, Grant filed suit against the County in Texas state court, asserting a claim for violations of the ADA.  The County removed the case to federal court.  On January 29, 2018, the County moved for summary judgment.  Nearly three months later, after extending Grant's response deadline multiple times, the district court granted the County's motion for summary judgment.  Grant subsequently filed a motion pursuant to Federal Rule of Civil Procedure 59 to amend the district court's final judgment, which the court denied.  Afterward, on May 23, 2018, Grant filed another lawsuit against the County in state court, asserting a claim for violations of Title VII. The County removed the case to federal court and moved to dismiss, or in the alternative, for summary judgment.  The second district court treated the County's motion as one for summary judgment and granted it.  Grant timely appealed both judgments, as well as other rulings made by the first district court.  The two appeals were consolidated in this court.

---

[1] The right-to-sue letter mistakenly referenced "Title V" instead of "Title VII."

**DISCUSSION**

Grant appeals five rulings:  the first district court's rulings on two pre-trial motions related to the district court's management of this case, the first district court's rulings on the County's motion for summary judgment and Grant's Rule 59(e) motion, and the second district court's ruling on the County's motion for summary judgment.  The court discusses each in turn.

## A. The First District Court's Case Management Related Rulings

Before entering summary judgment, the first district court denied Grant's motion for sanctions and motion for leave to file a fourth amended complaint.  Grant contends the district court abused its discretion in denying his motions.

This court reviews a district court's denial of a motion for sanctions for an abuse of discretion.  *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015).  A district court abuses its discretion if its ruling is based on an "erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2462 (1990).  Grant's motion for sanctions was predicated on his allegation that "the County destroyed documents relevant to Grant's claims, especially his harassment claims under the ADA."  The documents in question relate to an internal harassment complaint Grant filed in December 2011.  The County employee who originally investigated the complaint submitted a typewritten report that was allegedly based on the investigator's handwritten notes.  During discovery, the County produced the typewritten documents containing the report.  Because the handwritten notes were destroyed and the typewritten documents did not contain any self-evident authentication, Grant alleged the typewritten documents were false and moved for sanctions against the County.

During a hearing on the matter, several witnesses testified to the authenticity of the County's records, and the County submitted a forensic expert report showing that the typewritten notes were authentic and had been created by the investigator around the time of the investigation. In an abundance of caution, the district court ordered the County to allow Grant to inspect the County's computer system. The district court instructed the parties to schedule the inspection on an accelerated timeline because trial was less than six weeks away. But Grant waited three weeks to schedule the inspection and ultimately failed to attend. During the delay, the district court denied Grant's motion for sanctions. Grant does not contend that the district court's denial was based on an erroneous view of the law or assessment of the evidence. Instead, Grant argues the district court should have allowed Grant to conduct the inspection before ruling on the motion for sanctions. But Grant was given that opportunity and failed to timely pursue it. In light of the evidence establishing that the typewritten documents were authentic and Grant's failure to address the issue diligently, the denial of Grant's motion for sanctions was not an abuse of discretion.

The first district court's order denying Grant's motion for leave to file a fourth amended complaint is also reviewed for abuse of discretion. *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010). A party seeking leave to amend its pleading at an advanced stage in the proceedings must generally seek leave to do so. Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave when justice so requires." *Id.* A court can deny leave under Rule 15 when there is undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004).

No. 18-20353
Cons./w No. 18-20592

Grant argues he should have been granted leave to amend his complaint for a fourth time because his motion was timely and did not prejudice the County. On February 17, 2016, Grant received his right-to-sue letter for his ADA and Title VII claims. On May 23, 2016, he filed suit in the first district court only on the ADA claim. Grant later amended his complaint twice to expand his ADA allegations but never included the Title VII claim.[2] When Grant's response to the County's motion for summary judgment was due, and six weeks after the close of discovery, Grant moved for leave to file a fourth amended complaint so that he could plead a Title VII claim. Grant seeks to justify this delay by arguing that he did not actually receive a right-to-sue letter for his Title VII claim until 2018 because the 2016 letter contained a typographical error, stating that he had a right to sue under "Title V" instead of "Title VII." Grant demanded that the Justice Department re-issue the 2016 right-to-sue letter in 2018 without the error and now relies on the reissuance as the basis for his argument that his motion for leave was timely.

Grant's argument fails for two reasons. First, it is undermined by his admission below that his prior failure to bring his Title VII claim had been caused by an "inadvertent oversight of [Grant's counsel] in not typing the Title VII statute in [his prior amended complaints]." Indeed, Grant concedes in his briefing to this court that he moved for leave "upon discovery that no plea for a Title VII violation had been made in his prior complaints."

Second, even if the delay was caused by a typographical error in Grant's 2016 right-to-sue letter, as the first district court found, Grant's Title VII claim had prescribed at the time Grant sought leave to amend. Once a claimant

---

[2] Grant's Title VII claim was for retaliation based on his reporting that a supervisor was discriminating against Grant's coworkers. Grant did not allege the County discriminated against him personally in violation of Title VII.

receives a right-to-sue letter, he has ninety days to file a civil action under Title VII. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). "[T]he complainant is on notice from the date of receipt of the first dismissal letter that he has 90 days to file suit on the claims made to the EEOC, unless the second right to sue letter is issued pursuant to a reconsideration of the merits." *Washington v. City of Gulfport*, 351 F. App'x 916, 918 (5th Cir. 2009).[3] It is undisputed that the 2018 right-to-sue letter was issued to correct a technical defect, not pursuant to a reconsideration of the merits of Grant's original complaint. Thus, Grant had ninety days from the date he received the February 17, 2016 letter (May 17, 2016) to assert his Title VII claims. Grant's attempt to bring his Title VII claims in 2018 was therefore untimely. *See Santini v. Cleveland Clinic Fl.*, 232 F.3d 823, 825 (11th Cir. 2000) ("Here, the EEOC reissued a Notice merely to correct a technical defect rather than pursuant to a reconsideration of the Charge. Because the issuance of the second Notice . . . is immaterial, the district court did not err in finding that Santini's federal claims were time-barred.").

Grant's contention that his untimely motion for leave did not prejudice the County is also belied by his statement—made in his motion for leave to file a third amended complaint—that he would not add any "new causes of action in the amended complaint" because new claims would cause "prejudice or unfair surprise which would require additional discovery." Considering Grant did not seek leave until weeks after the close of discovery, sought to plead a claim that had prescribed, and admitted that new causes of action would be

---

[3] *See also January v. Tex. Dep't of Criminal Justice*, 760 F. App'x 296, 300 (5th Cir. Jan. 23, 2019). Although *Washington* and *January* are unpublished opinions and are not therefore binding on this court, they are useful evidence of this court's treatment of this issue.

prejudicial, the denial of his motion for leave to amend was not an abuse of discretion.

### B.    The First District Court's Rulings on the County's Motion for Summary Judgment and Grant's Rule 59(e) Motion

Grant contends the first district court erred in granting summary judgment in favor of the County on his ADA claims and denying Grant's subsequent Rule 59(e) motion.  Grant failed to respond to the County's motion for summary judgment.  Instead, after the district court entered summary judgment on Grant's ADA claims, Grant filed a Rule 59(e) motion, seeking to alter or amend the judgment based on newly presented evidence.  Grant now relies on this evidence on appeal and argues that it creates genuine disputes of material fact that should have precluded summary judgment.  Because Grant's arguments on appeal are based on evidence provided for the first time in his Rule 59(e) motion—evidence that was not considered by the district court in granting the County's motion for summary judgment—the court first addresses whether the district court erred in denying Grant's Rule 59(e) motion.

When a district court is presented with new evidence in a Rule 59(e) motion to alter or amend, and the court denies the motion, the standard of review depends on whether the district court considered the new evidence in reaching its decision. *Templet v. HydroChem, Inc.*, 367 F.3d 473, 477 (5th Cir. 2004).  If the district court considers the new evidence and still grants summary judgment, its decision is reviewed *de novo*.  *Id.*  If the district court refuses to consider the materials, "the reviewing court applies the abuse of discretion standard."  *Id.*  Likewise, if it is unclear whether the district court considered the new evidence, the court reviews the district court's denial of the Rule 59(e) motion for an abuse of discretion.  *Luig v. N. Bay Enters., Inc.*, 817 F.3d 901, 905 (5th Cir. 2016).

Because there is no indication in the record that the district court reviewed the new evidence Grant submitted in his Rule 59(e) motion, the district court's denial is reviewed for an abuse of discretion. Under this standard, the district court's decision "need only be reasonable." *Templet*, 367 F.3d at 477. A Rule 59(e) motion to amend "calls into question the correctness of the judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

Grant argues the district court erred in denying his Rule 59(e) motion because Grant "did not receive notice that the court would change or even reconsider" its prior ruling denying the County's motion for summary judgment. This contention is not supported by the record. Although the district court had originally denied the County's motion for summary judgment, the transcript of the district court's hearing on Grant's motion for sanctions shows the district court clearly indicated it was reconsidering its ruling. Accordingly, the district court explicitly and repeatedly directed Grant to file a response to the County's motion for summary judgment by the end of the following week. The district court explained that several statements Grant made about his alleged disability during his deposition were troubling and identified which issues Grant should address in his response.

Grant now appears to claim that he misunderstood the district court's directives and thought that he had already prevailed on the County's motion. But even if there had been a genuine misunderstanding about the district court's directive to file a response, Grant did not make any effort to clarify the status of the litigation or the court's request. Grant filed no response to the County's motion for summary judgment. Further, Grant's Rule 59(e) motion

did not identify a manifest error of law in the district court's judgment or demonstrate that the evidence attached to the motion was newly-discovered. The denial of Grant's Rule 59(e) motion was therefore reasonable and not an abuse of discretion.

Turning next to the district court's grant of summary judgment in favor of the County, this court reviews the summary judgment *de novo*, applying the same standard as the district court. *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 890 (5th Cir. 2003). Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).[4]

Grant argues the district court erred because there are genuine disputes of material fact as to whether the County violated the ADA by (1) discriminating against him because of his disability; (2) failing to provide a reasonable accommodation for his disability; (3) harassing him because of his disability; and (4) retaliating against him for seeking a reasonable accommodation.

First, Grant claims he was terminated because of his diabetes. Because Grant did not offer any direct evidence of discrimination, the modified *McDonnell Douglas* burden-shifting standard applies. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir 2007). To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that (1) he has a disability; (2) he was qualified for his position; and (3) there was a causal connection between an adverse employment action and his disability. *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016).

---

[4] Because Grant failed to respond to the County's motion for summary judgment, the district court was entitled to treat the motion as unopposed. *See* S.D. Tex. Local R. 7.4. ("Failure to respond to a motion will be taken as a representation of no opposition.").

If a plaintiff meets this initial burden, the employer can rebut it by articulating a legitimate nondiscriminatory reason for the adverse action. *Id.* If the employer provides such a reason, the plaintiff must offer evidence to show that the reason was pretext for discrimination. *Id.*

The County no longer disputes that Grant was disabled by reason of his diabetes. Grant, however, failed to offer any evidence establishing the other elements of his *prima facie* case. Nor does Grant address the third element on appeal—he focuses only on the causal link between his complaint of national-origin discrimination and his termination. Further, the County's uncontroverted evidence established that Grant was suspended and ultimately terminated after multiple disciplinary incidents, including Grant's alteration of documents, failure to maintain proper observation records, and violations of the County's Electronic Devices Policy. Grant offered no evidence that these legitimate reasons were pretextual. Summary judgment was therefore proper on this claim.

Second, Grant claims the County failed to provide reasonable accommodations for his alleged physical limitations related to his diabetes. To prevail on a failure-to-accommodate claim, a plaintiff must show (1) the plaintiff is a "qualified individual with a disability"; (2) the disability and its consequential limitations were known by the plaintiff's employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *Feist v. La., Dept. of Justice*, 730 F.3d 450, 452 (5th Cir. 2013). "[W]here the disability, resulting limitations, and necessary reasonable accommodations are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621

(5th Cir. 2009). "Once an employee makes such a request, however, the employer is obligated by law to engage in an interactive process: a meaningful dialogue with the employee to find the best means of accommodating that disability." *Id.* (internal quotations omitted). "[A]n employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal interactive process' is traceable to the employee and not the employer." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011).

The County's uncontroverted evidence established that Grant did not identify his limitations to his employer, request an accommodation, or engage in the interactive process. Grant now argues based on his untimely evidence that the County knew of his limitations and should have permanently assigned him to work that did not require him to walk or stand for long periods of time. Even considering Grant's evidence, the record establishes that the County sought to engage in an interactive process with Grant, but Grant refused to cooperate and denied needing accommodations. Indeed, as the district court found, Grant testified that, during all relevant time periods, he could walk or stand during the majority of his shift without accommodations. Summary judgment was therefore proper on this claim.

Third, Grant claims the County harassed him because of his disability. To prevail on a disability-based harassment claim, a plaintiff must show that (1) he belongs to a protected group; (2) he was subjected to unwelcomed harassment; (3) the harassment complained of was based on his disability; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003). "[T]he harassment must

be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Credeur v. La. Office of Att'y Gen.*, 860 F.3d 785, 796 (5th Cir. 2017).

Grant argues that the County harassed him by:  (1) assigning him to work on a different floor; (2) criticizing Grant's work-ethic in an investigation report; (3) posting a picture of Grant with his feet elevated on social media; (4) "deny[ing] Grant access to the control booth that others were free to use"; (5) "threatening to fire him if he did not sign a personnel document"; and (6) "waiting to relieve him to the last minute where he almost defecated on his clothing."  Despite the fact that Grant offered no evidence supporting these allegations in response to the County's motion for summary judgment, even taking them as true, this conduct is "not the type that courts have found to constitute harassment, and certainly not harassment that is sufficiently severe or pervasive to create a hostile work environment." *Credeur*, 860 F.3d at 796. Further, the record reveals that most of these actions were not related to Grant's disability, and to the extent they may have been, the County took prompt, remedial action, including terminating the employee that allegedly posted Grant's picture on social media.  Summary judgment was therefore proper on this claim.

Finally, Grant claims the County retaliated against him by suspending and ultimately terminating him for engaging in activity protected by the ADA. To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show (1) he participated in an activity protected under the ADA; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. *Feist*, 730 F.3d at 454.  As with a claim of ADA discrimination, if the plaintiff establishes a *prima facie* case, the burden shifts to the employer to state a

legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the employer provides such a reason, the plaintiff must offer evidence to show that the reason was pretext for retaliation. *Id.*

It is not clear from Grant's briefing what ADA-protected activity Grant claims he engaged in. Grant alleges he was retaliated against for complaining about national origin discrimination against another employee. But Grant's alleged complaint of national origin discrimination is not activity protected by the ADA. To the extent Grant alleges he was retaliated against for seeking a reasonable accommodation, as discussed above, the record establishes that Grant did not request an accommodation and denied needing one. Further, Grant did not offer evidence to show that the legitimate reasons for Grant's suspension or termination, discussed above, were pretextual. Summary judgment was therefore proper on this claim.[5]

## C. The Second District Court's Ruling on the County's Motion for Summary Judgment

The first district court also granted summary judgment on Grant's Title VII claims, although the first district court had previously denied Grant's motion for leave to amend his complaint to assert the Title VII claims. Grant subsequently filed another lawsuit in state court asserting the Title VII claims against the County. The County removed the case to federal court and moved to dismiss, or in the alternative, for summary judgment on the basis of res judicata. The second district court granted the County's motion, finding that res judicata applied based on the first district court's summary judgment. Grant contends the second district court erred in doing so.

---

[5] Grant also challenges the first district court's ruling granting the County's motion to strike several of Grant's trial witnesses. In light of the court's holding, we need not address this issue.

No. 18-20353
Cons./w No. 18-20592

Grant argues that res judicata does not apply to his second lawsuit because his Title VII claims were not properly before the first district court when it granted summary judgment.[6] But regardless of whether Grant's Title VII claims were properly before the first district court, as discussed *supra* Part.A, the claims had prescribed. Grant does not dispute that the Title VII claims asserted in the second district court were the same claims Grant sought to bring in the first district court. Grant received his right-to-sue letter on those claims in February 2016. Grant did not pursue his Title VII claims—in either district court—until 2018. The County raised prescription substantively in its motion for summary judgment in the second district court, and, although the district court did not grant summary judgment on that ground, this court "may affirm a summary judgment on any legally sufficient ground, even if not relied upon by the district court." *N.H. Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1200 (5th Cir. 1993). There is no debatable issue that the Title VII claims had prescribed. Summary judgment was therefore proper.

For the foregoing reasons, the judgments of the first and second district courts are **AFFIRMED**.

---

[6] Grant also argues that the County's res judicata defense was not properly raised because "res judicata is an affirmative defense that should not be raised as part of a 12(b)(6) motion but should instead be raised at summary judgment." Grant correctly states that a motion for summary judgment—rather than a Rule 12(b)(6) motion to dismiss—is the proper vehicle for raising a res judicata defense. *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005). Recognizing this, the second district court expressly treated the County's motion as one for summary judgment.